239 So.2d 176 (1970)
Alexander SAS JAWORSKY, Plaintiff-Appellee,
v.
Pierre LeBLANC, Defendant-Appellant.
No. 3161.
Court of Appeal of Louisiana, Third Circuit.
August 27, 1970.
Rehearing Denied September 29, 1970.
Writ Refused November 9, 1970.
J. Minos Simon, Lafayette, for defendant-appellant.
LeBlanc & Boudreau, by Albert Boudreau, Jr., Abbeville, for plaintiff-appellee.
Before HOOD, CULPEPPER and MILLER, JJ.
*177 HOOD, Judge.
This is an action instituted by Alexander Sas Jaworsky against Pierre LeBlanc to recover the value of some veterinary equipment and a share of the profits allegedly received by defendant from the sale of veterinary medicines and supplies. Judgment was rendered by the trial court condemning defendant to pay to plaintiff the sum of $2,468.55, ordering defendant to return to plaintiff certain items of veterinary equipment, and decreeing that in the event defendant fails to comply with that order plaintiff may apply to have the amount of damages fixed for items not returned. Defendant has appealed.
One of the issues presented is whether the agreement entered into between plaintiff and defendant relative to the sale of medicines and supplies constituted a partnership agreement or the establishment of a principal-agency relationship.
Defendant, among other defenses, contends that the parties entered into a partnership agreement, that the partnership has never been liquidated, that one partner cannot maintain a suit against another partner for an indebtedness growing out of the partnership relationship until the partnership has been liquidated, and that plaintiff thus has no cause of action for the relief which he seeks here.
Plaintiff contends that the relationship between him and defendant was that of principal and agent, and that he thus is entitled to maintain an action against defendant for the relief sought. Alternatively, plaintiff argues that a partnership to practice veterinary medicine, entered into by a person not certified to practice as a veterinarian, would be null and void, and thus there would be no need to dissolve or to liquidate it. And, further in the alternative, plaintiff contends that if a valid partnership was ever created it was dissolved by mutual consent before this suit was filed, that there is no common property to be accounted for, and that no formal liquidation thus is required.
Plaintiff Sas Jaworsky is a duly certified veterinarian, who has been engaged in the practice of veterinary medicine in Abbeville, Louisiana, since 1951. Defendant LeBlanc is not a veterinarian. He operates a lumberyard in Breaux Bridge, Louisiana, and he owns a number of race horses.
In early January, 1961, plaintiff entered into an agreement with LeBlanc, the purpose of which was to enable both parties to realize a profit from the sale of veterinary medicines and supplies in the Breaux Bridge area. Under the terms of this agreement LeBlanc provided office space for plaintiff in one of his lumberyard buildings in Breaux Bridge, and he advanced the sum of $1,000.00 for the purchase of veterinary medicines and supplies. Dr. Sas Jaworsky, pursuant to that agreement, purchased medicines and supplies with the money advanced by defendant, he prepared and furnished to defendant a retail price list of these medicines, and he moved some of his own office and surgical equipment into the Breaux Bridge office.
The parties agreed: (1) That LeBlanc was to sell the medicines and supplies at the prices set by plaintiff; (2) that LeBlanc thereafter was to pay for the additional medicines and supplies which were purchased for resale; (3) that LeBlanc could retain all of the profits derived from these sales until he reimbursed himself $1,350.00, as repayment of the amount which he had advanced plus a bonus or interest of $350.00; (4) that after LeBlanc had been reimbursed the above mentioned amount, he thereafter was to retain only one-half the profits derived from the sale of the medicines and supplies, and he was to pay the remaining one-half of such profits to plaintiff; (5) that LeBlanc was entitled to obtain all medicines and supplies which he needed for his own horses at cost; and (6) that plaintiff was to provide veterinary services for defendant's own animals at reduced rates.
*178 The medicines and supplies which were sold by LeBlanc pursuant to this arrangement were ones which could be obtained only by a licensed veterinarian from drug supply companies. Dr. Sas Jaworsky ordered the first medicines and supplies which were later sold by LeBlanc. These, of course, were paid for out of the funds which had been provided by LeBlanc. Shortly thereafter, plaintiff authorized certain drug company salesmen to contact LeBlanc directly, to fill the orders for veterinary medicines and supplies which LeBlanc gave him, and to bill Dr. Sas Jaworsky for the items which were ordered by defendant. LeBlanc paid for the drugs which were ordered on plaintiff's account in each instance, but Sas Jaworsky knew of the sales because copies of invoices were sent to him.
This agreement remained in effect from January, 1961, until some time during the summer of 1962, when Dr. Sas Jaworsky terminated it. In July or August, 1962, plaintiff sent a truck to Breaux Bridge to pick up his office furniture and surgical equipment from the Breaux Bridge office, but LeBlanc would not allow the equipment to be moved, claiming that Sas Jaworsky was indebted to him. Dr. Sas Jaworsky then refused to permit any more drugs to be shipped to LeBlanc, and eventually this suit was filed.
In order for a business relationship to be considered a partnership, the following circumstances must exist: (1) The parties must have mutually consented to form a partnership; (2) all parties must share in the losses as well as the profits of the venture; and (3) the property or stock of the enterprise must form a community of goods in which each party has a proprietary interest. LSA C.C. articles 2801, 2805, 2813 and 2814; Darden v. Cox, 240 La. 310, 123 So.2d 68 (1960); Fiesta Foods, Inc. v. Ogden, 159 So.2d 577 (La.App. 1 Cir. 1964); Amacker v. Kent, 144 La. 545, 80 So. 717 (1919).
A prerequisite to the creation of a partnership is an intent by the parties that the business relationship between them shall have the characteristics of a partnership. The mere agreement to share the profits from an enterprise is not sufficient to create the status of a partnership or a joint venture. Walker v. Delahoussaye, 116 So.2d 884 (La.App. 1 Cir. 1959); Labat v. Labat, 232 La. 627, 95 So.2d 129 (1957); Johnson v. Johnson, 235 La. 226, 103 So.2d 263 (1958); 35 TLR 448.
In Fiesta Foods, Inc. v. Ogden, supra, the First Circuit Court of Appeal held, correctly we think, that:
"It is settled jurisprudence that even if parties in an enterprise call the relationship a partnership and agree they will give their mutual consent to form it, it will not be considered a partnership in law as between them unless it is evident they share the losses as well as profits and that the property or stock of the undertaking forms a community of goods in which each party has a proprietary interest. Darden v. Cox, 240 La. 310, 123 So.2d 68.
"Moreover, where, by agreement, one party receives for his services a share of the profits of the business but is not responsible for losses and the capital is owned by the other party, there is no partnership. Carlson v. Ewing, 219 La. 961, 54 So.2d 414; Daigle v. Crescent City Garage, La.App., 180 So. 831; Whitmeyer v. Poche, La.App., 49 So.2d 69. It has also been held a mere agreement to share profits from an enterprise is not sufficient per se to create the status of a partnership or joint venture. Pennington v. Simmons, 138 So.2d 189."
We agree with defendant that we must look to the nature of the agreement and the intent of the parties to determine whether a partnership actually was formed, and that it is immaterial whether they used the word "partnership" in establishing their *179 business relationship. In the instant suit, the parties not only failed to use the terms "partnership" or "joint venture", but they also failed to include in the agreement any of the elements essential to the creation of a partnership. The evidence does not show, therefore, that the parties ever consented to form a partnership.
Under the above mentioned agreement Dr. Sas Jaworsky was not obligated to share in any losses which may have been sustained in this venture. LeBlanc furnished the building and all of the funds which were needed to buy the medicines and supplies. He was to receive and store the items so purchased, and he was to do the actual selling of them. Sas Jaworsky's principal contribution to this venture was the use of his name and his authorization for the drug companies to sell veterinary medicines and supplies to someone who was not a veterinarian. Under the agreement, however, Sas Jaworsky was not to be responsible for any debts which may have been incurred by LeBlanc or for any losses which may have been sustained in the purchase and resale of these medicines and supplies.
Finally, no property or stock of the enterprise was accumulated which formed a community of goods in which each party had a proprietary interest. The building was owned by LeBlanc, and the furniture and surgical equipment was owned by Dr. Sas Jaworsky. We assume that the medicine and supplies were owned by plaintiff, since they were purchased in his name, they could not be purchased by LeBlanc, and Dr. Sas Jaworsky determined and fixed the price at which each item could be sold. The evidence does not show that there were any accounts receivable or any other property or stock in which the parties had a community or joint interest.
None of the elements essential to the formation of a partnership thus were present in the agreement which was entered into between Dr. Sas Jaworsky and Mr. LeBlanc. Our conclusion is that the business relationship between the parties was not a partnership, but that instead there existed the relationship of principal and agent. Dr. Sas Jaworsky was the principal and Mr. LeBlanc was the agent for the sale of veterinary medicines and supplies. Plaintiff, as the principal, has the right to maintain an action against the defendant, as his agent, to recover any amounts allegedly owed to him by the agent.
The evidence includes a number of invoices which show that medicines and supplies were purchased by LeBlanc between October, 1961, and April, 1962, at a cost of a little more than $4,800.00. Dr. Sas Jaworsky testified as to the exact profit which should have been derived from the sale of the medicines shown on each of those invoices. Our computations show that, according to his testimony, the total profit which would have been realized from those sales would have amounted to $4,507.82 if all of the medicines shown on the invoices actually were sold at the prices listed by Dr. Sas Jaworsky. Plaintiff contends that he is entitled to recover one-half of those profits.
All of the above mentioned purchases were made after the original supply of medicines had been purchased by Dr. Sas Jaworsky, with the $1,000.00 initially advanced by LeBlanc. The trial judge obviously concluded that defendant had sold all of that original stock, and had realized a profit from those sales sufficient to reimburse him completely for the cash advance made by him when the agreement was entered into. Dr. Sas Jaworsky acknowledges, however, that the sum of $182.00 was still owed to LeBlanc after the original stock of medicine had been sold. LeBlanc had the right to retain all of the profits until he was fully reimbursed, and we think $182.00 thus must be deducted from the profits which were realized before a computation is made as to plaintiff's share of them.
LeBlanc contends that all, or at least ninety percent, of the medicines and supplies which were purchased, as shown by *180 the above described invoices, were used by him on his own horses, or on horses which he was training for other people. The trial judge concluded that all such medicines and supplies were not used by LeBlanc on his own animals, and we think the evidence supports that conclusion. One of the ledger books kept by an employee of defendant, for instance, shows many sales of veterinary medicines and supplies to other people. Dr. Sas Jaworsky and a drug salesman testified that the quantity of drugs purchased for the Breaux Bridge office was more than could possibly be used on the number of horses owned by defendant, and defendant produced no substantial evidence to rebut that testimony. Several stock owners testified that they purchased drugs from LeBlanc or his employee. And, finally, the records kept by defendant's employee shows that between January 1, and September 1, 1961, Mr. LeBlanc took medicines and supplies for his own use having a retail value of only $316.80.
Although the evidence fails to show that any specific amount of veterinary medicines or supplies were used by LeBlanc after August 30, 1961, it does show that be kept and trained approximately the same number of horses after that date as he did before, and we think it is reasonable and fair to conclude that he used about the same amount of medicines and supplies after August 30, 1961, and while this agreement was in effect, as he did before that date.
The record establishes, therefore, that while this agreement was in effect LeBlanc used veterinary medicines and supplies having a total retail value of $633.60. We conclude that about one-half of this amount, or $316.80, was profit, and that this sum also should be deducted from the total profits which the evidence indicates should have been realized from the sale of these items.
The evidence produced by plaintiff thus makes out a prima facie showing that profits amounting to the total sum of $4,507.82 were realized by LeBlanc. Defendant has shown that this figure should be reduced by $182.00 and by $316.80, leaving a net total of $4,009.02 which should be accounted for. Plaintiff is entitled to recover one-half of the last mentioned amount, or $2,004.51. The judgment of the district court thus must be amended to reduce the amount of the award to that sum.
For the reasons herein set out, the judgment appealed from is amended by reducing the amount of the award from $2,468.57 to the sum of $2,004.51. In all other respects the judgment of the district court is affirmed. One-half the costs of this appeal are assessed to plaintiff-appellee, and the remaining one-half of such costs are assessed to defendant-appellant.
Amended and affirmed.

On Application for Rehearing.
En Banc. Rehearing denied.