**In re Alfred Charles WINDEN d/b/a AL's Trash Service, Debtor.**

**Gene L. SCHAEFER, Plaintiff,**

v.

**Alfred Charles WINDEN, Defendant.**

**Bankruptcy No. 89–10232C.
Adv.P. No. 89 E 1105.**

United States Bankruptcy Court,
D. Colorado.

Oct. 26, 1990.

Richard Kraemer, Wallin & Peterson, Fort Collins, Colo., for debtor/defendant.

Craig Stirn, Fort Collins, Colo., for plaintiff.

## DECISION AND ORDER

ARTHUR N. VOTOLATO, JR., Bankruptcy Judge.[*]

Heard on May 9, 1990 on the Complaint of Gene L. Schaefer (the debtor's son-in-law), who requests that the claim against his father-in-law, Al Winden, be declared nondischargeable pursuant to 11 U.S.C. §§ 523(a)(2)(A) and/or 523(a)(4).

The debt in question, in the amount of $6,122.00 [1], is based on a judgment obtained by Schaefer in the Larimer County District Court on March 29, 1989. That litigation involved a dispute over the distribution of funds handled by Winden during the operation of the family business known as Al's Trash Service.

On March 22, 1990, the Bankruptcy Court, Chief Judge Matheson, denied the defendant's motion for summary judgment upon a finding that claims of fraud and/or breach of fiduciary obligations were not raised or ruled upon in the state court action.

## FINDINGS OF FACT

The business relationship between the parties began in April 1986, when they started a trash hauling business in Wellington, Colorado. Schaefer was in charge of driving the route and picking up trash, and Winden was responsible for revenue collections [2]. This arrangement, which lasted until May 1988, was initially conducted pursuant to an oral agreement, but was later reduced to writing, on March 11, 1988. (Plaintiff's Exhibit 10.)

---

[*] For the District of Rhode Island, sitting by designation.

[1] This debt represents a $6,000 judgment and $122 in costs.

[2] The parties also had an arrangement as to the division of profits from dumpsters, depending on who owned the particular dumpster, i.e. either a fifty-fifty split, or a seventy-five–twenty-five split. In addition, because Schaefer had certain customers of his own, he maintained those solely as his, while others were the joint customers of Schaefer and Winden.

Paragraph five of the written agreement provides that profits were to be divided as follows:

a) For those customers which are currently being serviced by Schaefer and billed by Winden, Schaefer shall receive 75% and Winden shall receive 25% of the collections, except that as to container customers the split shall be 50/50 until the containers are paid for in full; and

b) For those customers which are currently being serviced by Schaefer and billed by Schaefer, Schaefer shall receive 100% of the collections.

Agreement dated March 11, 1988. (Exhibit 10, ¶ 5.)

Under this arrangement, after collecting the receivables, which were paid mostly by check, Winden would endorse the checks and deliver them to Schaefer, who then paid Winden "his share."

From December 1987 until April, 1988, Winden was hospitalized, and asserts that due to said illness he was not able to accurately and responsibly attend to his collection and accounting duties. It was also during this time that the parties first began to disagree over Winden's record keeping and accountability to the business. Schaefer also testified, however, that he first began to suspect that "his partner" wasn't accounting to him properly, as far back as 1986.

Winden, on the other hand, after first testifying that he always gave all of the checks he collected to Schaefer, later admitted that "on a few occasions" he did not turn checks over, but instead cashed them at various locations, to purchase medication[3]. (See Plaintiff's Exhibits 2—9). Nevertheless, Winden insists that he never intended to cheat Schaefer out of any money, but that occasionally an emergency arose which required him to cash business checks for personal use[4].

In the state court action[5], which was brought to obtain an accounting, the District Court determined that Winden owed Schaefer $6,000 for funds collected but not accounted for. Therefore, the issue of the amount of unremitted collections is not before us[6].

## 11 U.S.C. § 523(a)(2)(A)—FRAUD

■ To have a debt declared nondischargeable under this subsection, the creditor must prove by clear and convincing evidence:

1. That the debtor made a materially false representation of fact;

2. With intent to deceive;

3. That the creditor relied on the false representation;

4. That the creditor's reliance was reasonable; and

5. That the creditor sustained a loss as a result of the debtor's representation.

*The May Department Stores Company, d/b/a May D & F v. Kurtz (In re Kurtz),* 110 B.R. 528 (Bankr.D.Co.1990); *First Bank of Colorado Springs v. Mullet (In re Mullet),* 817 F.2d 677, 680 (10th Cir.1987); *Simmons v. Wade (In re Wade),* 43 B.R. 976, 980 (Bankr.D.Co.1984).

■ As we view the evidence, Schaefer has not met this difficult § 523 burden of proof. Although, as to much of his testimony, the Court has difficulty with Winden's credibility, we cannot find, at least under the "clear and convincing" standard[7], that Winden intended, within the

---

3. There was no business checking account, and neither party maintained a formal record of invoices and receipts.

4. Winden also testified (but not very convincingly) that he always informed Schaefer as to the checks he cashed, and in what amounts, so that Schaefer could deduct such amounts from Winden's share of the profits.

5. The action was initiated as an arbitration proceeding, and resulted in the entry of judgment in the amount of $6,000 by the District Court of Larimer County, Colorado.

6. At trial, Winden protested that Schaefer did not always pay him his "rightful share" of the profits, either. However, because of the judgment rendered by the State District Court, Winden is collaterally estopped from arguing that point here.

7. If the plaintiff's burden of proof was by only a preponderance of the evidence, our conclusion herein would probably be different.

meaning of § 523(a)(2)(A), to deceive Schaefer by cashing, and not reporting, business checks. Likewise, even though we are skeptical of Winden's assertion that he *always* informed Schaefer as to checks cashed for his personal use, we do not find that such failure to report was done with the requisite fraudulent intent.

## 11 U.S.C. § 523(a)(4)—BREACH OF FIDUCIARY DUTY

Schaefer also contends, however, that he and Winden were partners, that as such each owed fiduciary obligations to the other, and that Winden breached his fiduciary obligation to Schaefer. Winden denies the existence of a partnership, and argues that their business relationship was more akin to agency. Our first inquiry then is to determine whether Schaefer and Winden were partners in the business known as Al's Trash Service.

■ Section 523(a)(4) exempts from discharge, debts arising out of "fraud or defalcation while acting in a fiduciary capacity, embezzlement, or larceny". 11 U.S.C. § 523(a)(4). To prevail under this subsection, the plaintiff must prove that: (1) the debtor was a fiduciary of the creditor; and (2) that while a fiduciary, debtor committed a defalcation or fraud. *Medved v. Novak (In re Novak) (In re Lattimore)*, 97 B.R. 47, 58 (Bankr.D.Kan.1987); *In re Cowley*, 35 B.R. 526 (Bankr.D.Kan.1983).

The Uniform Partnership Act, COLO. REV.STAT. § 7–60–106 (1990) defines a partnership as "an association of two or more persons to carry on, as co-owners, a business for profit." Under Colorado law "a partnership is created by persons agreeing orally or in writing to 'place their money, effects, labor, and skill, or some or all of them, in lawful commerce or business and to divide the profit and bear the loss in certain proportions.'" *Johnson v. Chilcott*, 599 F.Supp. 224, 226 (D.Colo.1984) (citing *Roberts v. Roberts*, 113 Colo. 128, 155 P.2d 155 (1945)); *see also Yoder v.*

*Hooper*, 695 P.2d 1182 (Colo.1984), *aff'd*, 737 P.2d 852 (Colo.1987). Implicit in this definition is the element of intent to form a partnership. *Watson v. Watson*, 231 Ind. 385, 108 N.E.2d 893 (1952); *see also, SAS Jaworsky v. LeBlanc*, 239 So.2d 176 (La. App.1970) ("[W]e must look to the nature of the agreement and the intent of the parties to determine whether a partnership actually was formed, and that it is immaterial whether they used the word 'partnership' in establishing their business relationship." *Id.* at 178–179); *Gosman v. Gosman*, 19 Md.App. 66, 309 A.2d 34 (Md.App. 1973) (Judgment modified by, *Gosman v. Gosman*, 271 Md. 514, 318 A.2d 821 (1974)); *Stone–Fox, Inc. v. Vandehey Development Co.*, 46 Or.App. 465, 611 P.2d 1195 (Or.App. 1980); *Montana Bank of Red Lodge, N.A. v. Lightfield*, 237 Mont. 41, 771 P.2d 571 (Mont.1989).

■ "Although intent of parties is a major factor, if facts bring arrangement within definition of a partnership, parties cannot escape liability incident to that relationship merely by saying that no such relationship exists; if intended action of parties creates partnership in fact, what parties call their arrangement or intend their arrangement to be is irrelevant." *Truck Ins. Exchange v. Industrial Indem. Co.*, 212 Mont. 297, 688 P.2d 1243 (1984); *Johnson, supra* at 227 (citing *Richardson v. Keely*, 58 Colo. 47, 142 P. 167 (1914)). Based upon the entire record, we find that Schaefer and Winden were partners in Al's Trash Service. Regardless of the fact that no formal "partnership agreement" was ever executed [8], the parties' conduct and the manner in which they ran the business is strong evidence of their joint intent to create and to operate as a partnership. The business involved an association of two persons; was intended to operate for profit; included an (oral) agreement as to the division of the partners' skills, resources, and labor; and contained an arrangement as to the division of profits and losses. Cumula-

---

**8.** We do not find that the document executed on March 11, 1988, by itself, constitutes a partnership agreement. However, said agreement constitutes relevant evidence of the parties' intention to associate for the purpose of carrying on a business for profit, and this supports our conclusion that a partnership existed.

tively, these overt facts outweigh Winden's argument that he did not consider himself to be Schaefer's partner, and his present denials do not alter the fact that a partnership existed. Accordingly, we find as a fact and conclude as a matter of law that the parties intended to and did form a partnership for the purpose of conducting a trash removal business.

Next, we must determine whether, under Colorado law, partners are fiduciaries, within the meaning of § 523(a)(4). While it is settled that "the meaning of 'fiduciary' in § 523(a)(4) is an issue of federal law, ..., state law is to be consulted to determine when a trust in this strict sense exists." *Ragsdale v. Haller*, 780 F.2d 794, 796 (9th Cir.1986) (citing *Runnion v. Pedrazzini (In re Pedrazzini)*, 644 F.2d 756, 758 (9th Cir.1981)). In addition, the trust must have been created prior to the act of wrongdoing; the debtor must have been a trustee before the wrong, and not a trustee *ex maleficio*. *In re Short*, 818 F.2d 693, 695 (9th Cir.1987) (citing *Davis v. Aetna Acceptance Co.*, 293 U.S. 328, 333, 55 S.Ct. 151, 153, 79 L.Ed. 393 (1934)).

In determining whether, under state law, a fiduciary relationship is created between partners, courts look first to the relevant state statute, and thereafter to the pertinent case law. *See, Ragsdale, supra* at 796; *In re Novak, supra* at 59. "As a general rule, courts will find the requisite express or technical trust when a state statute defines the relationship as a trust, or when the relationship has the typical attributes of a trust." However, both the California and Kansas courts have held that the state partnership statutes in issue, which are identical to Colorado's, (*see* COLO.REV.STAT.ANN. § 7–60–121), do not *per se* create the level of fiduciary duty required under § 523(a)(4)[9]. *Ragsdale, supra* at 796; *In re Novak, supra* at 59.

In *Ragsdale, supra,* however, the Ninth Circuit also held that "California courts, ..., have raised the duties of partners beyond those required by the literal wording of § 15021 [the relevant state statute]", ..., and that "[t]his is more than just a fiduciary relationship created in response to some wrongdoing; California has made all partners trustees over the assets of the partnership. Accordingly, ..., California partners are fiduciaries within the meaning of § 523(a)(4)." *Id.* at 796–797; *accord In re Short, supra* at 695; *cf. In re Novak, supra* ("In this case, plaintiffs have cited the Court no cases which impose a fiduciary duty above and beyond that created by K.S.A. 56–321" *Id.* at 60). Therefore, to determine whether Schaefer and Winden, as partners, stood in a similar fiduciary capacity to one another, we look to Colorado law to ascertain whether a partner is considered a trustee of partnership assets, for dischargeability purposes. "If state law makes clear that a partner necessarily is a trustee over partnership assets for all purposes, then that partner is a fiduciary within the narrow meaning of § 523(a)(4)." *Ragsdale* at 797; *In re Short* at 695.

■ On this issue, the Colorado law is clear and unambiguous. In *Hooper v. Yoder*, 737 P.2d 852 (Colo.1987), the Colorado Supreme Court held that "[p]artners in a business enterprise owe to one another the highest duty of loyalty; they stand in a relationship of trust and confidence to each other and are bound by standards of good conduct and square dealings. (citations omitted), ..., Each partner has the right to demand and expect from the other a full, fair, open and honest disclosure of everything affecting the relationship." *Id.* at 859. Moreover, the court found that "Hooper breached his fiduciary duty to his partner, Yoder, during the course of the wind-

---

9. The Kansas partnership statute, which is identical to California's, provides that:

Every partner must account to the partnership for any benefit, and hold as trustee for it any profit derived by him or her without the consent of the other partners from any transaction connected with the formation, conduct, or liquidation of the partnership or from any use by him or her of its property.

K.S.A. 56–321(a).

Both Kansas and California have determined that said statute "makes the trust arise only when the partners derive profits without the consent of the partnership", and that therefore, "the trust created is ... *ex maleficio* which is not included within the purview of § 523(a)(4)." *In re Novak, supra* at 59; *Ragsdale, supra* at 796.

ing-up process by excluding Yoder from participating equally in the issuance of corporate stock and *by withdrawing salary from the business without the assent or knowledge of Yoder*". *Id.* at 857 (emphasis added). The Court also held that "[p]artners as well as joint venturers are fiduciaries with respect to each other and owe to each other the highest duty of loyalty." *Id.* at 858 (citing *Lindsay v. Marcus,* 137 Colo. 336, 325 P.2d 267 (1958)); *see also In re Tsamasfyros*, 114 B.R. 721 (D.Colo. 1990); *Skeen v. Harms (In re Harms)*, 10 B.R. 817 (Bankr.D.Colo.1981) ("A partnership agreement creates a fiduciary relationship among the members of the partnership; it is a contract based upon personal trust and confidence." *Id.* at 821). So it seems as though Colorado goes at least as far as California on this issue, and based upon all of the foregoing authorities, we conclude that Colorado does impose a fiduciary obligation on partners, within the purview of § 523(a)(4).

Lastly, we must consider whether Winden committed a defalcation while acting in his fiduciary capacity. "Generally, defalcation is a failure to account for money, or property that has been entrusted to one." *Celone v. Dino (In re Dino)*, 82 B.R. 184, 186 (Bankr.D.R.I.1988) (citing *In re Cowley*, 35 B.R. 526, 529 (Bankr.D.Kan. 1983)). Clearly, Winden's failure to account to Schaefer for business-generated receivables (as determined in the State Court proceeding), together with his unauthorized and unannounced personal use of such funds, constitutes a defalcation under § 523(a)(4).

Accordingly, it is ORDERED that Winden's debt to Schaefer, in the amount of $6,000, is determined to be nondischargeable in this bankruptcy, pursuant to 11 U.S.C. § 523(a)(4).

Enter Judgment consistent with this opinion.