In re Elmer Robert OLINGER and Bernice Belle Olinger a/k/a Bernice B. Schiffer, Debtors.

CENTRAL BANK OF DENVER, Trustee of the Sylvia Kearney Trust and Sylvia Waldman f/k/a Sylvia Kearney, Plaintiffs,

v.

Bernice Belle OLINGER a/k/a Bernice B. Schiffer, Defendant.

Bankruptcy No. 93–10358 RJB.
Adv. No. 93–1269 PAC.

United States Bankruptcy Court, D. Colorado.

April 4, 1994.

284

Mark J. Rubin, Denver, CO, for plaintiffs.

Royce Edward Tolley, Castle Rock, CO, for defendant.

## ORDER

PATRICIA ANN CLARK, Bankruptcy Judge.

This matter is before the Court upon the complaint filed by Central Bank of Denver as Trustee of the Sylvia Kearney Trust and Sylvia Waldman f/k/a Sylvia Kearney (collectively Plaintiffs) objecting to the dischargeability of an obligation based upon fraud or defalcation while acting in a fiduciary capacity.

The Court has jurisdiction pursuant to 28 U.S.C. §§ 1334 and 157.

This case involves the unfortunate circumstance of Bank of Denver as Trustee of the Sylvia Kearney Trust along with Sylvia Waldman, suing Sylvia Waldman's sister, Bernice Olinger, for defalcation while acting as trustee of their father's estate. The relevant facts are as follows.

1. On August 23, 1979, Sidney H. Schiffer created a trust (SHS Trust). The trust agreement was amended on June 13, 1982. The changes are not relevant to this proceeding and the amendment incorporated all other terms of the original trust agreement (SHS Trust Agreement). Three of the beneficiaries of the trust were Mr. Schiffer's daughters, Bernice Olinger, Sylvia Waldman and Carolyn Schiffer. Bernice Olinger served as co-trustee of the SHS Trust along with her father.

The SHS Trust Agreement dated August 23, 1979, states in relevant part in Article 1–2 Disposition During My Life:

1–2.1 *Income and Principal:* While I am living my trustee shall dispose of all net income and the principal **as I direct from time to time by a writing delivered to my trustee** ... (Emphasis added.)

1–2.2 *Checking and Savings Accounts:* My trustee may maintain checking and savings accounts in any commercial bank or savings and loan institution. Any cash funds which may become payable to me or my trustee may be deposited into such accounts. **Withdrawals against such accounts may be made by me individually or as trustee or, if in accordance with this agreement, by any trustee.** Any such withdrawal by me ·shall constitute written instruction concerning disposition of net income or principal. My trustee shall have no liability for any use which I may make of such account. (Emphasis added.)

The trustee is to exercise all powers in the Colorado Fiduciaries Powers Act which is incorporated into the SHS Trust Agreement as the act existed on June 13, 1982.

2. Bernice Olinger wrote over 500 checks as trustee of the SHS Trust without written authorization or the co-signature of Mr. Schiffer.

3. Mr. Schiffer died on September 12, 1987. His three daughters survived him.

4. Sylvia Waldman is the beneficiary of the Sylvia Kearney Trust established pursuant to the SHS Trust Agreement.

5. Bernice Olinger was the original trustee of the Sylvia Kearney Trust.

6. On September 28, 1987, Ms. Olinger wrote a letter to Sylvia Waldman. In the letter she disclosed that Mr. Schiffer had "loaned" her approximately $47,000. She proposed to repay Ms. Waldman and Carolyn Schiffer their ⅓ shares of that loan by giving each of them a $27,000 interest in Oasis Car Wash at 8% per year and $2,166.67 in cash some time in the future.

7. The actual amount of the loan was determined to be $47,943.08 based upon several checks written by Ms. Olinger to or for the benefit of herself and her husband. Each daughters share of the loan was $15,981.03. (Exhibit 15.)

8. On November 22, 1989, Ms. Olinger and Sylvia Kearney entered into a Settlement Agreement to resolve certain differences between them regarding the management of the Sylvia Kearney Trust. Pursuant to the settlement, Ms. Olinger resigned as trustee of the Sylvia Kearney Trust and Central Bank of Denver became the trustee of that trust. Ms. Olinger signed a promissory note in favor of the Sylvia Kearney Trust for the amount of $15,981.01 [1] with interest at 9% per annum on the unpaid balance from November 1, 1989. The note was payable in full on or before August 1, 1992.

9. On November 3, 1992, Central Bank of Denver as trustee of the Sylvia Kearney Trust obtained a default judgment against Bernice Olinger based upon her default in the repayment of the note. In addition, $1,912.50 in fees was awarded along with $115 in court costs. Ms. Olinger disputes that she was ever properly served with the complaint in the state court action.

10. On January 14, 1993, Ms. Olinger filed a petition for bankruptcy relief under Chapter 7 of the Bankruptcy Code.

The legal issue and respective contentions of the parties are straightforward. The Plaintiffs claim that the portion of money due to the Sylvia Kearney Trust based upon Ms. Olinger's loan should not be discharged as it was obtained through a defalcation of Ms. Olinger's duties as trustee of the SHS Trust. Conversely, Ms. Olinger asserts that a defalcation requires more than a breach of the trust agreement. She contends that there must have been some malfeasance or misconduct.

■ As a preliminary matter, the Court shall address a minor issue involving the ability to look behind the promissory note [2]

to inquire whether the $15,981.01 is dischargeable for defalcation by a fiduciary. The Tenth Circuit resolved this issue in *Arnold v. Employers Ins. of Wausau (In re Arnold)*, 465 F.2d 354 (10th Cir.1972), a case decided under a provision of the Bankruptcy Act which is virtually identical to the provisions of 11 U.S.C. § 523(a)(4). The court followed those courts which held that "[t]he acceptance of a note from one who procures a sum of money by fraud, as an evidence of the debt thereby created, after the fraud has been discovered, does not take the debt out of the operation of the ... the Act." *Id.* at 356 (citations omitted). Accordingly, the Court must look behind the note to see if the obligation arose due to a defalcation of Ms. Olinger as Trustee.

■ The applicable Code provision is Section 523(a)(4) which provides in pertinent part:

> A discharge under section 727 ... of this title does not discharge an individual debtor from any debt—(4) for fraud or defalcation while acting in a fiduciary capacity, embezzlement, or larceny ...

There are two elements which must exist to establish that a claim is nondischargeable under this section: a fiduciary relationship and a defalcation.

■ The term fiduciary is interpreted narrowly under Section 523. *See e.g., In re Romero*, 535 F.2d 618 (10th Cir.1976), and its progeny. The trustee of an express trust is a fiduciary of the trust beneficiary. *See Peerless Ins. Co. v. Misiaszek (In re Misiaszek)*, 162 B.R. 80 (Bankr.D.N.H.1993).

■ On the other hand, the term defalcation is broadly defined. *Anderson v. Currin (In re Currin)*, 55 B.R. 928, 934 (Bankr. D.Colo.1985). Defalcation "can be a mere deficit resulting from the debtor's misconduct, even though he derived no benefit therefrom. Defalcation may also result from the debtor's negligence or ignorance." *San Saba Pecan, Inc. v. Failing (In re Failing)*,

---

1. This figure appears to be 2 cents short of the figure found in exhibit 15, but is the figure agreed upon by the parties.

2. It is the $15,981.01 obligation which must be determined to be non-dischargeable, not the amount due from the default judgment upon the promissory note.

124 B.R. 340, 344 (W.D.Okla.1989) (citation omitted). Judge Learned Hand cogently explained the meaning of the word defalcation in the context of bankruptcy in *Central Hanover Bank & Trust Co. V. Herbst,* 93 F.2d 510, 511 (2d Cir.1937). Judge Learned Hand noted:

> Colloquially perhaps the word, 'defalcation', ordinarily implies some moral dereliction, but in this context it may have included innocent defaults, so as to include all fiduciaries who for any reason were short in their accounts.

 The majority of bankruptcy courts do not require misconduct or bad faith or fraud activity as an element of "defalcation" under Section 523(a)(4). *E.g., Peerless Ins. Co. v. Misiaszek (In re Misiaszek),* 162 B.R. 80, 82 (Bankr.D.N.H.1993) and cases cited therein. Furthermore, in the minority of courts that recognize misconduct as a factor, "even the slightest misconduct not incorporating usual notions of bad faith activity would be sufficient." *Id.,* (citing *Mullin v. Mullin (In re Mullin),* 91 B.R. 175 (Bankr.S.D.Fla.1988); *In re Failing supra.*) Finally, as the judge in *Misiaszek* opined, even if misconduct was an element of defalcation, it can be equated with the failure to observe clear and specific restrictions and limitations upon the fiduciary in the trust document and there is no additional bad faith element. 162 B.R. at 82.

There is no dispute that Ms. Olinger is a fiduciary as trustee under the SHS Trust Agreement.

The language of the SHS Trust Agreement providing that no checks were to be written from the checking and savings accounts without written authorization is unequivocal. There was no written authorization for the loan Ms. Olinger made to herself. Furthermore, pursuant to C.R.S. Section 15–1–305 of the Colorado Fiduciaries Act, the terms of the instrument govern and nothing in the statute authorizes a departure from the instrument's express terms. Although the SHS Trust Agreement terms may have been honored more in the breach than the observ-

ance, the written terms are the ones the trustee had a duty to obey.

 This Court follows the majority of courts which hold that a defalcation is a failure to account for money [3] received in a fiduciary capacity. Ms. Olinger obtained "loans" from the trust by making disbursements to or for her benefit without obtaining written authorization pursuant to the SHS Trust Agreement. Although she was forthright in revealing these loans to her sister, her actions resulted in a reduction in the amount of funds available to the SHS Trust and consequently for the Sylvia Kearney Trust. Moreover, even if misconduct is an element of defalcation, Ms. Olinger's failure to observe the restrictions in the SHS Trust Agreement is sufficient to find misconduct. The Court concludes that Ms. Olinger's actions constitute a defalcation by a fiduciary pursuant to Section 523(a)(4). Accordingly, it is

ORDERED that the objection to the discharge of the $15,981.01 obligation to the Sylvia Kearney Trust is sustained.

---

3. The failure to account for money is not used in the same context as "to provide an accounting". It refers to a deficit resulting from the debtor's failure to obey the terms of the trust. *See generally, In re Failing,* 124 at 344.