**In re Walter Alan WOODS, Debtor.**

**Richard L. CUNDY, M.D., Clifford E. Hamburg, Richard M. Jacoby, M.D., Brian M. McGuire, M.D., Robert L. Manning and Patricia M. Mitchell, individually and collectively, Plaintiffs,**

**v.**

**Walter Alan WOODS, Debtor/Defendant.**

**Bankruptcy No. 93–14139–PAC.
Adv. No. 93–1509–SBB.**

United States Bankruptcy Court,
D. Colorado.

Nov. 4, 1994.

Peggy J. Anderson, Roman C. Pibl, Dufford & Brown, P.C., Denver, CO, for plaintiffs.

Paul G. Quinn, Denver, CO, for debtor/defendant.

## MEMORANDUM OPINION AND ORDER OF COURT

SIDNEY B. BROOKS, Bankruptcy Judge.

THIS MATTER came before the Court for trial on September 8, 9, and 16, 1994. At the trial, Plaintiffs were represented by Peggy J. Anderson and Roman C. Pibl of Dufford & Brown, P.C. and Defendant was represented by Paul G. Quinn.

## I. INTRODUCTION

Plaintiffs, Defendant, and several others were joint venturers in the Merham Company Joint Venture, a real estate investment and development group, in the 1980s. Defendant filed bankruptcy in 1993. Plaintiffs seek to except from Defendant's discharge of debt their respective claims pursuant to 11 U.S.C. § 523(a)(4). They maintain that Defendant, as an attorney, a joint venturer, and/or as a member of the Merham Company Joint Venture's Management Committee, engaged in conduct constituting defalcation while acting in a fiduciary capacity. Defendant denies all of the Plaintiffs' allegations and generally, maintains he acted properly and within the scope of his authority with consent and knowledge of the project's joint venturers, including the three Plaintiffs.[1]

The Court granted, in substantial part, the Defendant's motion to dismiss Plaintiffs'

1. On Plaintiffs' motion, three of the six original Plaintiffs were dismissed with prejudice. *See,* Order issued July 13, 1994. The remaining three Plaintiffs at trial were Dr. Richard L. Cundy, Dr. Richard M. Jacoby, and Dr. Brian M. McGuire.

claims at the conclusion of the presentation of Plaintiffs' case. At that time, the Court made findings and concluded that the Plaintiffs had not presented evidence sufficient, in quality or quantity, to preponderate in support of their claims regarding the "Platte Valley" loan. The Court, however, concluded that with regard to the "Fox Ranches" loan, the Plaintiffs had submitted sufficient persuasive evidence pursuant to Section 523(a)(4) that the Defendant must go forward with his case. Therefore, the Court denied the Defendant's Motion to Dismiss as to the Fox Ranches loan.

The findings and conclusions respecting that decision, as expressed by the Court on the record, are expressly adopted in their entirety herein.[2] The Court, having heard the evidence of the parties and being otherwise fully advised, makes the following findings of fact and conclusions of law on the remaining issues relating to the Fox Ranches loan.

## II. FINDINGS AND CONCLUSIONS

1. At all times relevant to this action, Defendant was a joint venturer with the three Plaintiffs in the Merham Company Joint Venture ("Merham"). There were approximately 20 joint venturers in the Merham real estate development project.

2. Defendant also served as a member of the Merham Management Committee ("Management Committee") from May, 1982 through, at least, 1987.

3. Merham was formed with the intent of purchasing land and building three commercial buildings. The buildings were to be built in sequence.

4. In 1983, the first building was completed.

5. Also in 1983, Merham borrowed money from Platte Valley Savings and Loan Association. The money from Platte Valley Savings and Loan Association was ostensibly borrowed so that Merham could proceed with building the second building in its three-building real estate development plan.

6. Defendant was the attorney for Merham for a relatively limited period of time and, specifically, at the closing of the Platte Valley loan ("Platte Valley Closing"). Defendant also attended the Platte Valley Closing as a joint venturer and as a member of the Management Committee.

7. Defendant was the chief representative for Merham at the Platte Valley Closing.

8. None of the Plaintiffs or joint venturers, except those on the Management Committee, attended the Platte Valley Closing.

9. None of the Plaintiffs served on the Management Committee.

10. The Platte Valley Closing included, inter alia, the Fox Ranches loan, described below.

11. The Platte Valley Closing was originally scheduled for and conducted on October 28, 1983, and was concluded on October 31, 1983. At the Platte Valley Closing, Merham borrowed $53,000.00 from Fox Ranches, Inc. The promissory note for the Fox Ranches loan was not signed by the Plaintiffs. The $53,000.00 was borrowed at 14% per annum, a reasonable rate at that time. At the time the money was borrowed from Fox Ranches, Inc., Betty Denham, the wife of Thomas Denham, another member of the Management Committee and a joint venturer, had an ownership interest in Fox Ranches, Inc.[3]

12. At no time prior to the Platte Valley Closing, did the Plaintiffs, or any other joint venturer including the Defendant and other Management Committee members, know of the need for a loan which resulted in the Fox Ranches loan in the amount of $53,000.00 to Merham. Thus, at no time prior to the Platte Valley Closing, was the Fox Ranches loan transaction specifically approved.

---

2. The two loan transactions are integrally and substantially related with regard to the Merham Company Joint Venture's projects. However, they are two separate, rather independent loan transactions, and should be treated differently for purposes of this dispute and in accordance with 11 U.S.C. § 523(a)(4).

3. Testimony established that Betty Denham's interest in Fox Ranches, Inc., was a minority, or approximately one-third, interest.

13. Among the business communications which were, evidently, routinely initiated by the Management Committee between and among all the joint venturers, a meeting was apparently held on September 1, 1983 concerning the Platte Valley loan transaction. Attendance at this meeting and/or recollections of discussions during the meeting are, among the parties, inconsistent, if not contradictory.

14. Because the need to borrow money from Fox Ranches, Inc. was not known at the September 1, 1983 meeting, it could not have been discussed or authorized at that meeting.

15. Prior to the Platte Valley Closing, Plaintiffs signed Borrowing Resolutions for the Platte Valley loan which were marked as Exhibits L, R, and NN. The Borrowing Resolutions were signed by the Plaintiffs as follows: Richard Jacoby on September 1, 1983, Richard Cundy on September 1, 1983, and Brian McGuire on September 9, 1983. Pursuant to the Borrowing Resolutions, the Plaintiffs authorized Defendant and other members of the Management Committee to borrow only up to $2,500,000.00. Because the Borrowing Resolutions were signed prior to the Platte Valley closing, and prior to the Management Committee's awareness that an additional loan would be required to close the Platte Valley loan, the Borrowing Resolutions did not authorize a loan from Fox Ranches, Inc. and did not disclose the insider interest of Betty Denham in Fox Ranches, Inc.

16. Exhibit 19, a Merham borrowing authorization, is a key disputed document in this case. The joint venturers signed the authorizations in Exhibit 19 more than two weeks prior to the Platte Valley Closing, and therefore, two weeks prior to the time that the need for the Fox Ranches loan was even known. Exhibit 19 was not an unlimited authorization; it was not a blank check.

17. Furthermore, Exhibit 19 did not authorize Defendant and other members of the Management Committee to (a) borrow money from Fox Ranches, Inc. or (b) exceed the express $2,500,000.00 loan authorization or limitation.

18. The Borrowing Resolution marked as Exhibit 20, which was signed after Exhibits L, R, and NN were signed, authorized the Management Committee to close a loan in the amount of $2,475,000.00, on the terms set forth in the loan commitment dated October 12, 1983. Exhibit 20 did not authorize a loan from Fox Ranches, Inc., did not disclose the insider interest of Betty Denham in Fox Ranches, Inc., and did not authorize a loan in excess of $2,475,000.00.

19. Exhibit 20 references the October 12, 1983 loan commitment which is marked as Exhibit 21. That loan commitment authorized a loan payoff at the Platte Valley Closing of only $555,000.00.

20. Prior to the Platte Valley Closing, Plaintiffs were never told that money would be borrowed from an entity known as Fox Ranches, Inc., or that Betty Denham had an ownership interest in that entity. Plaintiffs were not told that $53,000.00 had been borrowed until after the money had been borrowed and the liability for the loan had been incurred.

21. Money was borrowed from Fox Ranches, Inc. to pay Otero Savings and Loan ("Otero") enough money to release the second parcel of land for Building 2. At the time of the Platte Valley Closing, Otero held a deed of trust to the remaining two parcels of land on which Merham intended to build the second and third buildings, according to Merham's original real estate development plan. The money which was borrowed from Fox Ranches, Inc. was used to pay Otero a $10.00 per square foot release fee for the release of the land for Building 2.

22. Pursuant to Exhibit 21, prior to the Platte Valley Closing, Platte Valley committed to lend Merham money, even if Merham had insufficient funds with which to release the second parcel of land from the Otero deed of trust. The land payoff figure of $555,000.00 as reflected in paragraph 17 of Exhibit 21 was the amount necessary to make the past due payment to Otero under the Modification Agreement which was marked as Exhibit 12B. Pursuant to Exhibit 12B, the following amounts were due to Otero: (a) a principal payment of $454,490.59, (b) an extension fee of $9,089.81, and (c) accrued

interest on those amounts from October 15, 1983 until October 28, 1983. The remaining unpaid principal and interest under the Otero obligation were not due until July 15, 1984.

23. On October 28, 1983, it was not necessary to borrow money from Fox Ranches, Inc. to pay to Otero to release Building 2.[4] If Merham had not borrowed money from Fox Ranches, Inc. to pay to release Building 2, Merham would have borrowed only enough money to pay off the past due principal payment and extension fee to Otero and to obtain permanent financing on Building 1.

24. Defendant, as the attorney and representative of Merham at the Platte Valley Closing, was entrusted with a "res" by the Plaintiffs. That res consisted of a bundle of rights and authorizations to act for and on behalf of the joint venturers, and to commit Merham and each venturer to finance and build a real estate project, specifically Phase 2, or Building 2, of a three-building project.

25. Between October 28, 1983, the original closing date, and October 31, 1983, the continued closing date, Mr. Denham called Defendant and told him about the loan from Fox Ranches, Inc.

26. On October 31, 1983, Defendant met with Mr. Rubin, the attorney for Platte Valley, for a continued closing. Defendant reviewed and approved, as the attorney for Merham, as a member of the Management Committee, and as a joint venturer, the revised settlement statement which is marked Exhibit H. The revised settlement statement authorized a land payoff to Otero in the amount of $620,007.23. The additional amount which was paid to Otero came from proceeds of the Fox Ranches loan.

27. At and during the Platte Valley Closing, Defendant voted in favor of the Fox Ranches loan, as did the other members of the Management Committee. Defendant voted to approve the loan, both as a member of the Management Committee and as a joint venturer.

28. Defendant, as a member of the Management Committee, as an attorney and as a joint venturer, never personally or directly called or wrote to the Plaintiffs to tell them that the Fox Ranches loan money was (a) going to be borrowed by Merham, (b) had been borrowed from Fox Ranches, Inc., or (c) that an insider, Betty Denham, had an ownership interest in Fox Ranches, Inc. Communications by other Management Committee members with other joint venturers in this regard, is unclear. However, it appears that some communications were made to some joint venturers regarding the Fox Ranches loan between October 28, 1983 and the final Fox Ranches loan transaction on October 31, 1983.

29. Defendant made insufficient inquiries regarding the Fox Ranches loan. As a member of the Management Committee, as a joint venturer, and as the attorney for Merham at the Platte Valley Closing, he had a duty to make such inquiries.

30. In Colorado, one joint venturer owes to the other joint venturers a duty of full disclosure and good faith and fair dealing. *In re Winden,* 120 B.R. 570, 574 (Bankr.D.Colo.1990).

31. An insider loan, such as the Fox Ranches loan, inherently involves a conflict, which may only be resolved by full disclosure. This principle was confirmed at the trial by the Defendant's own expert witness, Mr. Walter Slatkin.

32. The Fox Ranches loan was repaid in July 1984. The entire amount including principal and accrued interest which was repaid was $58,276.00. It was paid out of the proceeds of a loan from Colorado Bank and Trust. The Colorado Bank and Trust loan was in turn paid off by the permanent financing loan on Building 2 which was obtained from Pacific Pioneer Savings. Because of the debt to Fox Ranches, Inc., the loan from Pacific Pioneer was $58,276.00 more than it otherwise would have been. Merham subsequently defaulted on its obligation to Pacific

---

**4.** Even if, as a practical matter at the Platte Valley Closing, it was determined that full payment to Otero had to be made, still it was not previously disclosed; it was not a part of the

"deal"; and it was not within the limits of borrowing authority contemplated by and extended by the Plaintiffs.

Pioneer. Plaintiffs and three other joint venturers, Mr. Hamburg, Mr. Manning, and Ms. Mitchell paid a total of $887,500.00 to Pacific Pioneer to settle Merham's obligations to it, as reflected in Exhibit P(1). Defendant contributed nothing to the settlement with Pacific Pioneer.

33. Immediately prior to Defendant's investment in Merham, Defendant had gone through a divorce. Defendant's ex-wife received approximately one-half of all his assets in the divorce. Defendant viewed his investment in Merham as one vehicle to help him recover financially. Advancing the interests of Merham served his interests. However, he, arguably, took less risk than the Plaintiffs because his assets were depleted. Defendant, in fact, did not pay anything toward the Pacific Pioneer settlement. Instead, he filed bankruptcy, as did others in Merham.

34. Plaintiffs were credible witnesses. Defendant appeared credible as well. However, Defendant testified about a September 1, 1983 meeting and, with some specificity, what was authorized at that meeting. Yet on two previous occasions, Defendant testified that he had little or no memory of that meeting, what had been discussed, or what had been authorized.

35. Mr. Slatkin, the Defendant's expert witness, did not know about or consider the impact of Betty Denham's interest in Fox Ranches, Inc. when he made his conclusions and expressed his opinions favorable to Defendant. There is also some question as to Mr. Slatkin's possible bias in favor of Defendant. He has known Defendant since the 1970's and was employed as an expert witness in a case Defendant was handling two years ago. In addition, Mr. Slatkin is a long-time friend of Richard Briethaup, Defendant's partner.

36. This Court has legal expertise and experience in matters such as those here before the Court. Mr. Slatkin's conclusions on the ultimate legal issues of the case are carefully considered but are certainly not decisive or dispositive of the central issues here before the Court.

37. At no time, evidently, did Defendant advise the Plaintiffs to seek their own independent counsel regarding the Platte Valley Closing, joint venture liability or other joint venture matters.

38. The Joint Venture Agreement, marked Exhibit GG, required an affirmative vote of the majority of the joint venturers in order for the Management Committee to borrow funds on behalf of Merham or to contract on an obligation binding Merham. Such a vote was not taken for the Fox Ranches loan.

39. Additionally, the Management Committee's December 1, 1983 status letter to Plaintiffs and other joint venturers about the project was an inadequate and untimely disclosure on the Fox Ranches loan because (a) it did not mention Fox Ranches, Inc., (b) it did not disclose Betty Denham's interest in Fox Ranches, Inc., (c) it did not disclose that the Fox Ranches loan resulted in a borrowing in excess of $2.5 million authorized by Plaintiffs, and (d) it was not provided to Plaintiffs until after the money had actually been borrowed and the liability incurred.

### III. CONCLUSIONS OF LAW

Plaintiffs must prove by a preponderance of the evidence that their debt is non-dischargeable pursuant to 11 U.S.C. § 523(a)(4). *Grogan v. Garner*, 498 U.S. 279, 111 S.Ct. 654, 112 L.Ed.2d 755 (1991). Pursuant to Section 523(a)(4), bankruptcy will not discharge a debt "for fraud or defalcation while acting in a fiduciary capacity, embezzlement or larceny." Therefore, the Plaintiffs must prove (1) Defendant acted in a fiduciary capacity, and (2) Defendant engaged in conduct constituting defalcation while acting in a fiduciary capacity.

Joint venturers and management committee members have fiduciary obligations. *In re Winden, supra; In re Schwenn*, 126 B.R. 351, 352 (D.Colo.1991). As a member of the Management Committee, as a joint venturer, and as the attorney for Merham at the Platte Valley Closing, Defendant was acting in a fiduciary capacity. As such, he owed certain fiduciary obligations to his joint venturers. United States

District Court Judge Jim R. Carrigan recently reaffirmed the fiduciary role of, and thus the fiduciary duties inherent in, a person serving as a corporate officer for a corporation, a partner, as well as a joint venturer:

> It is well established under Colorado law that corporate directors and officers owe a fiduciary duty to the corporation and its shareholders. [Citation omitted.] The Colorado Supreme Court in *Kullgren v. Navy Gas & Supply Co.* [110 Colo. 454, 135 P.2d 1007 (1943) ], observed:
>
> > The directors of a corporation act in a strictly fiduciary capacity. Their office is one of trust and they are held to the high standard of duty required of trustees. . . .
>
> \* \* \* \* \* \*

In *Schwenn*, this Court considered the Colorado Supreme Court's statement that 'where title to property acquired in connection with a joint venture is in the name of one of the parties he holds it in trust for his associates. [Citations omitted.] This Court held that the phrase " 'holds in trust' clearly means trust in the technical, legal sense." [Citation omitted.] Thus, Colorado common law imposes upon partners a technical trust relationship such that partners act in a fiduciary capacity for purposes of § 523(a)(4).

> \* \* \* \* \* \*

I conclude that Colorado common law imposes upon corporate directors and officers a technical trust relationship similar to that imposed upon partners, such that corporate directors and officers also act in a fiduciary capacity within the meaning of § 523(a)(4).

*In re Friedman* (*Harold's Pawn Shop, Inc. v. Friedman*), Civil Action No. 94–C–311, Order issued September 30, 1994 by the Honorable Jim R. Carrigan, at pp. 3–4.

Defendant, in his capacity as a joint venturer, a Management Committee member, and the attorney for Merham at the Platte Valley Closing, was acting in a fiduciary capacity within the meaning of Section 523(a)(4).

The Court must next consider whether Defendant committed acts constituting a defalcation while acting in a fiduciary capacity. The defalcation standard is still not well defined in this District.

> While defalcation, in the context of Section 523(a)(4) does not always lend itself to a precise definition, it is clear that it is more encompassing than either 'embezzlement' or 'misappropriation.' [Citations omitted.] [W]hen a fiduciary takes money . . . he is guilty of a 'defalcation' though it may not be a 'fraud' or an 'embezzlement' or perhaps even a 'misappropriation.' *In re Currin,* [55 B.R. 928,] 934 [ (Bankr.D.Colo. 1985) ].
>
> *In re Kudla,* 105 B.R. 985, 991 (Bankr. D.Colo.1989).

Although cases have clearly established that actual misappropriation or embezzlement of funds is sufficient to meet the defalcation standard, *see, In re Schwenn, supra,* the minimum standard for defalcation has not been defined. *See e.g., In re Olinger,* 165 B.R. 283 (Bankr.D.Colo.1994) (Defalcation can arise from the debtor's negligence or ignorance and does not require any actual misconduct or bad faith (regarding acceptance of unauthorized loans from trust)); *Kudla, supra* at 991 (Defalcation can, under proper facts, be "a mere deficit resulting from the debtor's misconduct, even though he received no personal gain," and may be through "negligence or ignorance rather than misconduct"); *In re Currin,* 55 B.R. 928, 934 (Bankr.D.Colo.1985) (Defalcation is more encompassing than fraud, embezzlement or misappropriation).

 Applying a minimum standard of what is culpable conduct under § 523(a)(4), one where a simple mistake, oversight, poor business judgment or carelessness with respect to high fiduciary duties in dealing with others' money, or rights, constitutes defalcation, this Court concludes that Defendant did, indeed, engage in conduct constituting defalcation while acting in a fiduciary capacity. *See e.g., In re Currin, supra; In re Janikowski,* 60 B.R. 784 (Bankr.N.D.Ill. 1986).[5]

---

**5.** If the standard for defalcation is higher than that applied here, if the standard requires illegal or fraudulent conduct, knowing deceit or purposeful self-dealing, maliciousness, recklessness,

This Court recognizes that there are many, indeed most, cases where violation of Section 523(a)(4) involves misuse of money held for another or abuse of authority or responsibility by the fiduciary. *See e.g., Schwenn, supra; Olinger, supra; Kudla, supra; In re Brown*, 131 B.R. 900 (Bankr.D.Me.1991). Such cases, the vast majority of cases, are the easy cases; the acts complained of more clearly fit into the categories of misappropriation, embezzlement, or misuse of funds. The instant situation, is, however, different. The acts complained of here are not so clearly improper, illegal, self-serving, malicious, or abusive.

In the instant situation, the *res* entrusted to the Defendant was, as stated previously, a bundle of rights and borrowing authorizations which carried with them personal liability and financial obligations of the joint venturers, including these three Plaintiffs. Defendant's mistake, oversight, and/or poor judgment was: (a) to approve and sign an obligation on an insider loan, without advance notice of same to the joint venturer obligors and for which obligation the joint venturers would be personally liable, (b) to approve and sign an obligation which exceeded the specific and express limitation of $2,500,000.00 attached to this phase of Merham's business, (c) to approve and sign on a loan without adequate investigation or fact finding, and (d) to approve and sign on a loan without timely, accurate and effective delivery of material information on such loan to all venturer-obligors.

IT IS THEREFORE ORDERED that the relief sought in Plaintiffs' Complaint is GRANTED in part and DENIED in part. Defendant's Debts arising out of the Platte Valley Loan transaction are dischargeable. Defendant's debts to the Plaintiffs arising out of the Fox Ranches loan are non-dischargeable pursuant to 11 U.S.C. § 523(a)(4).

IT IS FURTHER ORDERED that judgment shall enter in favor of Plaintiffs and against Defendant, Walter Alan Woods, as follows:

| | Plaintiff | Principal | Prejudgment Interest | Total |
|---|---|---|---|---|
| (1) | Brian McGuire | $10,595.00 | $7,750.00 | $18,345.00 |
| (2) | Richard Cundy | $ 5,298.00 | $3,860.00 | $ 9,158.00 |
| (3) | Richard Jacoby | $10,595.00 | $7,750.00 | $18,345.00 |

or gross negligence, then Defendant did not, in this Court's opinion, engage in conduct constituting defalcation while acting in a fiduciary capacity.