**AMERICAN INSURANCE COMPANY,**
**Plaintiff,**

v.

**Paul M. LUCAS and Doris M. Lucas,**
**his wife, et al., Defendants.**

**Civ. A. No. 83–633.**

United States District Court,
W.D. Pennsylvania.

July 26, 1984.

Robert F. McCabe, Pittsburgh, Pa., for plaintiff.

Michael Ristvey, Jr., Sharon, Pa., for defendant debtors.

Andrew D. Regule, Sharon, Pa., pro se for trustee.

## MEMORANDUM

GLENN E. MENCER, District Judge.

This case comes as an appeal from the Bankruptcy Court to determine dischargeability of a debt under 11 U.S.C. § 523(a) by corporate debtor, Beckdol Sporting Goods Company, and individual debtors, Paul M. Lucas and Doris M. Lucas, his wife. As a result of debtor-defendants failure to remit proceeds to the Commonwealth of Pennsylvania from the sale of hunting and fishing licenses, plaintiff, American Insurance Company, was required to pay to the Commonwealth a certain sum pursuant to its surety bond relative to the debtors. Plaintiff objects to the discharge of this debt on the basis of 11 U.S.C. § 523(a)(4), alleging that debtors defalcated while acting in a fiduciary capacity.

The prayer of the complaint was dismissed as to the corporate debtor, Beckdol Sporting Goods Company, as the case was filed after October 1, 1979 when the Bankruptcy Reform Act of 1978 went into effect and Section 727(a) of said Act (11 U.S.C. § 727(a)(1)) provided that corporate debtors are not eligible to be discharged. We affirm this finding.

The Court is satisfied that the defendants were not acting in a fiduciary capacity in their agreement with the Commonwealth whereby hunting and fishing licenses were sold at the debtor's place of business. Therefore, § 523(a)(4) is inapplicable and the aforementioned debt is dischargeable. Accordingly, the appeal is dismissed and the order of the bankruptcy court, 21 B.R. 585, affirmed.

## FACTS

There is no dispute as to the important facts. The corporate-debtor, Beckdol Sporting Goods Company, was appointed as an agent of the Commonwealth of Pennsylvania to sell hunting and fishing licenses and remit the proceeds, less commissions, to the Commonwealth. The Act of 1925, P.L. 448 § 225, 30 P.S. § 225, *as amended,* provides that license fees, less the agent's commissions, paid to an issuing agent of fishing licenses for the Commonwealth shall be paid into the State Treasury at least once a month, and the Act of 1968, P.L. 73 § 1, 34 P.S. § 1311.311 provides that issuing agents of hunting licenses shall remit balances arising from sales of hunting licenses within five days after the end of each month to the State Treasurer.

The individual husband-debtor, Paul Lucas, owned all of the stock of the corporation, was in charge of its business and operations, and had full knowledge of the matters here involved. His co-debtor-wife, Doris Lucas, acted as a company bookkeeper and signed the reports to the Commonwealth setting forth the amounts of the license receipts and the fees owing the Commonwealth thereon which were remitted for the years 1971 through 1978, but became delinquent for 1979 and 1980 in the sum of $6,000.00 for hunting license fees and $4,465.00 on fishing licenses.

The facts in this case reflect a more or less continuing course of conduct by defendants, spanning the years 1976 through 1980, in borrowing against the license funds and using the money to pay the bills of the company.

The fees due the Commonwealth were not segregated or deposited in a separate account, but were commingled with other funds with which the company's expenses, including the Commonwealth's license fees, were paid.

By commingling license fees with other company funds and balancing accounts to pay debts as they became due, Beckdol was able to stay in business during 1979. At

the end of 1979, when final accounting to the Commonwealth was due, Beckdol's Sporting Goods Company was unable to pay the money due the Commonwealth.

During the 1979 period, Beckdol timely filed all but one of the required periodic reports. These periodic filings were accompanied by some $35,000 collected from the sale of the hunting and fishing licenses. The Commonwealth collected the amounts in default under the debtors' bonds from the plaintiff surety, the American Insurance Company.

The parties stipulated that at no time during 1979 did Beckdol falsify or misrepresent a single item included in its report.

### DISCUSSION

Section 523(a)(4) of the Bankruptcy Code states:

(a) A discharge under 727, 1141, or 1328(b) of this title does not discharge an individual debtor from any debt—

(4) for fraud or defalcation while acting in a fiduciary capacity, ...

The plaintiffs in this case allege that the debts owed by the debtors herein should be declared nondischargeable pursuant to this provision.

The cases construing this provision hold that for a debt to be nondischargeable within the meaning thereof, the monies appropriated or converted must comprise defalcation in performance of obligations assumed under the provisions of an express trust, and not from an agency or implied trust relationships or from misappropriations made by a trustee ex maleficio. *Matter of Angelle*, 610 F.2d 1335 (5th Cir.1980).

The predecessor of Section 523(a)(4) appears at § 17(a)(4) of the old Bankruptcy Act which provides that petitioner's debts were nondischargeable if they "were created by his fraud, embezzlement, misappropriation or defalcation while acting as an officer or in any fiduciary capacity." [former 11 U.S.C. § 17(a)(4) ]

Both the current section invoked by plaintiff and its predecessor require that a debtor be in a fiduciary capacity if a debt created by fraud or defalcation is sought not to be discharged. Fiduciary capacity as used in the bankruptcy statute requires an express trust, and that unless there be some additional fact, § 17(a)(4) does not apply to frauds of agents.

In *Davis v. Aetna Acceptance Co.*, 293 U.S. 328, 55 S.Ct. 151, 79 L.Ed. 393 (1934), involving an automobile dealer who had entered into a "trust receipt" financing arrangement with a lending company, but failed to turn over the proceeds from the sale of a motor vehicle held under the trust receipt, Justice Cardozo stated:

It is not enough that by the very act of wrongdoing out of which the contested debt arose, the bankrupt has become chargeable as a trustee ex maleficio. He must have been a trustee before the wrong and without reference thereto ... Was petitioner a trustee in that strict and narrow sense?

We think plainly he was not, though multiplicity of documents may obscure his relation if the probe is superficial.... The resulting obligation is not turned into one arising from a trust because the parties to one of the documents has chosen to speak of it as a trust. [*Davis*, 293 U.S. 328, 334, 55 S.Ct. 151, 154, 79 L.Ed. 393]

■ Under § 523(a)(4), a defalcation does not require any intentional wrongdoing on the part of the debtor that would amount to fraud, embezzlement or misappropriation. Rather, a defalcation may be found where the debtor has misapplied funds held by him as a fiduciary under the belief that he is authorized to do so.

■ However, as pointed out by Justice Cardozo, in order for the liabilities to be nondischargeable under the Bankruptcy Code, plaintiff must show that the debtors were fiduciaries of the Commonwealth for the purposes of the payment of the hunting and fishing license fees. The plaintiff argues that the statute itself creates the fiduciary relationship and that the subsequent nonpayment of the funds, whether inten-

tional or not, provides the necessary defalcation under § 523(a)(4). However, this Court holds that under the Bankruptcy Code the fiduciary duties must be express. *Collier on Bankruptcy*, 15th Edition, Section 523.14 on page 523–99 states:

> The qualification that the debtor be acting in a fiduciary capacity has consistently, since its appearance in the Act of 1841, been limited in its application to what may be described as technical or express trusts, and not to trusts ex maleficio that may be imposed because of the very act of wrongdoing out of which the contested debt arose. There is no reason to believe section 523(a)(4), insofar as it relates to a debtor acting in a fiduciary capacity, does not apply to frauds of *agents*, bailees, brokers, factors, partners and other persons similarly situated. Also, the commonplace frauds of the ordinary debtor in disposing of his property so as to hinder, delay, or defraud his creditors are not within clause (4). Nor does the phrase "in a fiduciary capacity" include or apply to trusts which are merely implied by law from contracts. (Emphasis supplied.)

Thus, in order for Section 523(a)(4) to be applicable here, the fiduciary relationship between the debtors and the Commonwealth must have been established at the time of the creation of the agency relationship as specified under the Act of 1968, P.L. 73 § 1, 34 P.S. § 1311.311 and the Act of 1925, P.L. 448 § 225, 30 P.S. § 225, *as amended.* Additionally, there was no showing that the statutes intended to create a trust relationship. The Pennsylvania legislature, of course, could create such a trust by statute. However, in the absence of such express legislative action, these debts cannot be held nondischargeable.

Therefore, this Court interprets the qualifying terms "fiduciary duty" under Section 523(a)(4) to require proof of a trust between the agent and principal before a debt due and owing between them can be found nondischargeable. The facts in the instant case do not demonstrate such a relationship and therefore an order of dis-

missal was properly entered by the Bankruptcy Court.