In re Allen S. MULLIN, Jr. and Deborah G. Mullin, Debtors.

William E. BERRY and Joyce Berry, Plaintiffs,

v.

Allen S. MULLIN, Jr., Defendant.

Bankruptcy No. 88–00801–BKC–SMW. Adv. No. 88–0259–BKC–SMW–A.

United States Bankruptcy Court, S.D. Florida.

Sept. 13, 1988.

Robert Wayne Pearce, Fort Lauderdale, Fla., for creditors.

Raul A. Cuervo, Miami, Fla., for debtors.

## FINDINGS OF FACT AND CONCLUSIONS OF LAW

SIDNEY M. WEAVER, Bankruptcy Judge.

THIS CAUSE having come before the Court upon the complaint of William E. Berry and Joyce Berry, his wife, (the "creditors") against Allen S. Mullin, Jr., (the "debtor") to determine the dischargeability of a state court judgment pursuant to 11 U.S.C. § 523(a)(4), and the Court having heard the testimony, examined the evidence presented, observed the candor and demeanor of the witnesses, considered the arguments of counsel, and being otherwise fully advised in the premises, does hereby make the following Findings of Fact and Conclusions of Law:

Jurisdiction is vested in this Court pursuant to 28 U.S.C. § 157(a), (b) and § 1334(b), and the district court's general order of reference. This is a core proceeding in which the Court is authorized to hear and determine all matters relating to this case in accordance with 28 U.S.C. § 157(b)(2)(I).

The debtor was a licensed real estate broker. On or about May 23, 1986, the creditors entered into an exclusive listing agreement with the debtor, whereby the debtor became the exclusive real estate agent for the creditors in the sale of their residence. A contract ("Berry–Sacks") was executed on June 26, 1986 after negotiations between the parties.

On June 19, 1986, an individual by the name of Meade and his broker viewed the creditors' residence in contemplation of a possible purchase. The debtor told Meade that the house was already under contract but nevertheless, on June 20, 1986, Meade instructed his broker to submit an offer to purchase the creditors' residence. On June 23, 1986, Meade's broker spoke with the debtor and conveyed to him a verbal offer on behalf of Meade to purchase the creditors' residence at a price in excess of Sacks pending offer. At no time prior to June 26, 1986, the date the Berry–Sacks contract became binding, did the debtor communicate to the creditors the existence of any verbal offer by Meade.

On July 7, 1986, the creditors first learned of Meade's verbal offer to purchase their residence and complained to the debtor about his failure to communicate the offer to them. On October 29, 1986, the creditors advised the debtor that he had breached his fiduciary duty to them by not communicating the more advantageous offer made by Meade. The creditors demanded that the debtor relinquish his commission from the sale of the residence and pay them the amount necessary to compensate them for the loss of profit resulting from the breach or, in the alternative, to place in escrow the full commission amount with a mutually agreeable escrow agent pending resolution of the dispute by an appropriate tribunal. On October 30, 1986, the debtor, in reply to the creditors' demand, denied the allegations and refused to hold any monies in escrow following the closing of the Berry–Sacks contract.

■ By November 5, 1986, the date of the closing, the creditors had instituted suit against the debtor seeking to enjoin him from disbursing any monies from the escrow account and for damages. Despite the creditors' demand, and the filing of a complaint for injunction, the debtor disbursed funds from the escrow account to himself. The state court ultimately entered a judgment against the debtor for breach of contract and fiduciary duty in the amount of $33,400.00.

The adversary complaint alleges that the state court judgment should be excepted from discharge pursuant to 11 U.S.C. § 523(a)(4). A bankruptcy court is not bound by a state court's findings when determining dischargeability of a debt under 11 U.S.C. § 523. *See Brown v. Felson*, 442 U.S. 127, 99 S.Ct. 2205, 60 L.Ed.2d. 767 (1979). Therefore, this Court will determine whether the state court judgment is non-dischargeable under 11 U.S.C. § 523 on the evidence presented at the bankruptcy trial.

■ Under 11 U.S.C. § 523(a)(4) a judgment is excepted from discharge if it resulted from "fraud or defalcation while acting in a fiduciary capacity." *Morales v. Codias (In re Codias)* 78 B.R. 344, 346 (Bankr.S.D.Fla.1987). Defalcation is defined as the slightest misconduct, negligence or ignorance and it does not require intentional conduct. *In re Codias*, 78 B.R. at 346. In order to avoid dischargeability of a debt under 11 U.S.C. § 523(a)(4) a bankruptcy court must find that both a defalcation occurred and a fiduciary relationship existed. *Id.* at 346.

■ In the instant case, the debtor, as escrow agent, failed to act in accordance with the escrow provision of the Berry–Sacks contract and Florida Law. Fla.Stat. § 475.05, § 475.25(1)(d) and § 475.25(1)(k) (1988); Fla.Admin.Code Ann. 21V–14.011 (1988). The debtor refused to hold the disputed commission in escrow in accordance with the contract and Florida law, pending resolution of the dispute. Therefore, the Court finds that the debtor wrongfully took monies from the escrow account over the creditor's objection and in violation of the law. This act constitutes a defalcation.

As previously stated, in addition to finding that the debtor committed a defalcation, a bankruptcy court must also find that a fiduciary relationship existed. *In re Codias*, 78 B.R. at 346. "The finding of a fiduciary relationship requires proof of an express or technical trust." *Id.* at 346. *See also McClain v. Elliot (In re Elliot)*, 66 B.R. 466, 467 (Bankr.S.D.Fla.1986). The term "fiduciary" is limited to "express trusts and not to trust imposed because of an act of wrongdoing out of which the debt arose, or to trusts implied by law from contracts." *Borg-Warner Acceptance Corp. v. Miles (In re Miles)* 5 B.R. 458 (Bankr.E.D.Va.1980). Consequently, the courts interpreting 11 U.S.C. § 523(a)(4) "have attempted to avoid construing the exception so broadly that it reaches ordinary commercial relationships such as debtor-creditor and principal-agent." *In re Miles*, 5 B.R. at 458, 460. Nevertheless, real estate agents and real estate brokers have been held to occupy a fiduciary relationship with their clients. *Bellity v. Wolfington (In re Wolfington)*, 48 B.R. 920, 924 (Bankr.E.D.Pa.1985); *Dempsey v. Lawrence (In re Lawrence)*, 10 B.R. 853 (Bankr.E.D.Va.1975). This is especially true where the real estate agent is handling funds which have been entrusted to him by his client. *Hamby v. St. Paul Mercury Indemnity Co.*, 217 F.2d 78 (4th Cir.1954).

In the instant case, the debtor, was a licensed real estate broker and entered into an exclusive listing agreement with the creditors. The debtor also executed the Berry-Sacks contract, as the escrow agent. The Berry-Sacks contract contained an express provision concerning the duties and obligations of the escrow agent. This provision created the express or technical trust, to which the debtor was bound. Therefore, the Court finds that a fiduciary relationship existed between the parties as required under 11 U.S.C. § 523(a)(4).

Based upon the foregoing, this Court finds that the state court judgment is excepted from discharge under 11 U.S.C. § 523(a)(4) because of the debtor's defalcation while acting in fiduciary capacity.

A separate Final Judgement of even date has been entered in conformity herewith.