In re Ronald C. FRANCISCO, Debtor.

**H. Quillian JONES, Jr. and Joseph K. Isley, Jr., Plaintiffs,**

v.

**Ronald C. FRANCISCO, Defendant.**

**Bankruptcy No. 95–10784–9P7.**
**Adversary No. 96–437.**

United States Bankruptcy Court,
M.D. Florida,
Ft. Myers Division.

Dec. 18, 1996.

T. Rankin Terry, Jr., Ft. Myers, FL, for Plaintiff.

Jeffrey W. Leasure, Ft. Myers, FL, for Defendant.

**FINDINGS OF FACT, CONCLUSIONS OF LAW AND MEMORANDUM OPINION**

ALEXANDER L. PASKAY, Chief Judge.

The matter under consideration in this Chapter 11 case is a challenge of the right of Ronald C. Francisco (Debtor) to the dischargeability of specific debts owed by him to Dr. H. Quillian Jones, Jr. (Dr. Jones) and Joseph K. Isley, Jr. (Dr. Isley) (Plaintiffs). The objections to discharge are based on § 727(a)(3) of the Bankruptcy Code (Count IV) and § 727(a)(5) (Count V). The claims of nondischargeability are based on § 523(a)(4) (Count I), § 523(a)(2)(A) (Count II), and § 523(a)(6) (Count III). At the commencement of the Final Evidentiary Hearing, counsel for the Plaintiffs announced that neither Plaintiffs desired to pursue the claims of nondischargeability based on § 522(a)(2)(A)

(Count II) and § 523(a)(6) (Count III). In addition, it was also announced that Dr. Isley would not present any evidence in support of his claims set forth within the Complaint and thus, this Court dismissed his claims with prejudice. At the conclusion of the presentation of the Dr. Jones' case, counsel for the Debtor moved for an involuntary dismissal of the objections to discharge based on § 727(a)(3) (Count IV) and § 727(a)(5) (Count V). Dr. Jones having failed to present any evidence in support of these claims, this court granted the motion and dismissed those claims with prejudice pursuant to F.R.B.P. 7041(b). The remaining claim under consideration is the charge of nondischargeability based on § 523(a)(4), Count I of the Complaint.

The record reveals that at the time relevant, the Plaintiff, Dr. Jones was a practicing physician specializing in general surgery. Sometime in the early 1970s, Dr. Jones was approached by a sales person of the realty firm of Swor and Santini who attempted to interest Dr. Jones to invest in a shopping center project referred to as Key Estero. Dr. Jones had some mis-givings about the bona fides of the sale representative and declined to accept an invitation to participate in the development. Sometime thereafter, he was approached by the Debtor who, coincidentally, was also connected to the same real estate firm and discussed with Dr. Jones the same investment. Ultimately, Dr. Jones agreed, being a busy surgeon, to engage the services of Debtor as an investment advisor for the Doctor's real estate investments. To formalize this understanding, the Debtor and Dr. Jones executed a document known as the Investment Management & Custodial Agreement (Management Agreement) (Plaintiff's Exh. 1B). There is a serious dispute whether or not, when the document was executed, the compensation to be paid to Debtor was actually inserted in the blank space of Paragraph 9 entitled "Compensation to Manager" of the Management Agreement. According to the Debtor it was filled in and provided that he would be paid, $21,000.00 plus, annually for his services. According to Dr. Jones, there was no such fixed amount determined at the time the agreement was executed, and to the contrary, it was his understanding that the Debtor would earn his compensation from the commission he was to receive when a particular transaction was concluded. Although there is some evidence in this record that Dr. Jones did pay the Debtor some compensation, albeit not possibly more than twice, the evidence is uncontradicted that no compensation was paid in last ten years or so. Thus, if the claim is valid, the Debtor has in excess a complaint against Dr. Jones in excess of $200,000.00 for unpaid compensation.

The crux of the controversy centers around three checks, which were issued by the Debtor, on the trust account of the project known as Tamalico. The checks in dispute are as follows: the first check dated January 28, 1994 in the amount of $4,000.00, the second check dated March 23, 1994 in the amount of $19,787.15, and the third check dated March 23, 1994 in the amount of $655.80. (Plaintiff's Exhs. 1C, 1D, 1E). It is without dispute that these checks were signed by the Debtor, payable to Dr. Jones, endorsed by the Debtor and ultimately the proceeds of the checks received by the Debtor.

The record further reveals, that Dr. Jones borrowed money from First National Bank of Southwest Florida (FNB) and that he pledged his limited partnership interest and the investment return from the Tamalico project as collateral to FNB. It is also undisputed that Dr. Jones, the Debtor and Harvey Youngquist, the trustee of the Tamalico Trust executed a document entitled Agreement pursuant to which the Debtor was to service Dr. Jones' loan by paying the investment return not to Dr. Jones but directly to FNB until the debt was paid in full. This transaction is in part in controversy because according to Dr. Jones, there was a breach of the Debtor's fiduciary duty, or in the alternative, there was an embezzlement of funds and/or an actual larceny of these funds because the Debtor had no authority whatsoever to use these funds for his personnel benefit.

It appears that Dr. Jones suffered a debilitating heart attack in 1988 and was forced to retire. After his retirement, he embarked on

an extensive globe trotting excursions by going on big game hunting trips to such places as Siberia, Mongolia, Australia, Canada, and Alaska. The record further reveals that during this period of time, Dr. Jones received from the Debtor, acting as his financial advisor, approximately $28,500.00 a month in order to enable Dr. Jones to maintain his current lifestyle. Nothing in this record should warrant the findings that the funds paid to Dr. Jones during the relevant time were loans by the Debtor to Dr. Jones and the most it could be said, is that it represented an advancement by the Debtor toward anticipated returns from Dr. Jones' investments.

In defending against the claim of nondischargeability, the Debtor admitted and recognized that he was a fiduciary but contends that he was entitled to appropriate the checks in question and the proceeds in same because of the monies owed to him for unpaid services rendered over the years by him to Dr. Jones. In this connection it should also be noted that the Debtor concedes that he never made any serious attempts to collect the monies he was entitled to and never made any formal demands on Dr. Jones. Thus, this casts a serious doubt on his claim that he was in fact, by contract, entitled to annual compensation in the amount claimed. Be that as it may, there is no evidence in this record to support the proposition that Dr. Jones authorized him to endorse the checks and use the proceeds to his own benefit.

Basically, these are the salient facts based upon which the Plaintiff contends he is entitled to the relief sought under § 523(a)(4) of the Bankruptcy Code. This Court, having considered the record and testimony declares that the money owed to the Plaintiff, represented by the three checks is within the exception recognized by the general exceptions to discharge, § 523(a)(4) of the Bankruptcy Code either based on a theory of defalcation by acting as a fiduciary or, in the alternative, under the theories of embezzlement or larceny.

■ It is now well established that the burden of proof in asserting a claim of nondischargeability is no longer a clear and convincing evidence standard but a mere preponderance of evidence is enough to suffice to prevail on a claim of nondischargeability. *Grogan v. Garner*, 498 U.S. 279, 111 S.Ct. 654, 112 L.Ed.2d 755 (1991). It is also true that the discharge provision of the Bankruptcy Code is remedial and thus, Courts agree that it should be construed liberally in order to assist the Debtor to have a "fresh start" in life free from pre-existing financial burdens. *Lines v. Frederick*, 400 U.S. 18, 91 S.Ct. 113, 27 L.Ed.2d 124 (1970); *Local Loan Co. v. Hunt*, 292 U.S. 234, 54 S.Ct. 695, 78 L.Ed. 1230 (1934). Thus, any exception to the discharge must be strictly construed against the one asserting the claim and unless all the operating elements of a claim of nondischargeability are established by the requisite standard of a preponderance of the evidence, the claim must fail.

■ Applying the foregoing legal principles to the facts established in this adversary proceeding, this Court is satisfied first, that the Debtor was a fiduciary within the meaning of this term used in § 523(a)(4), second, that he did breach his duty as a fiduciary and third, that he was guilty of defalcation. For the purposes of the Bankruptcy Code section making nondischargeable a debt resulting from fraud or defalcation by the Debtor while acting in a fiduciary capacity, a creditor need not show any wrongdoing on the part of the Debtor to prove defalcation by fiduciary, rather, because of special trust given to the fiduciary, defalcation includes innocent defaults in duty. *In re Anderson*, 64 B.R. 331 (Bankr.N.D.Ill.1986); *Central Hanover Bank & Trust Co. v. Herbst*, 93 F.2d 510 (2d Cir. 1937). Even assuming that he did in fact have a valid claim against Dr. Jones for unpaid compensation over the years, there is nothing in this record to indicate that the Debtor was ever authorized directly or indirectly to resort to self-help. It is evident from this record that the Debtor was fully aware of the assignment by Dr. Jones of his interest in the Tamalico project and well knowing this fact, the Debtor had an absolute fiduciary duty to pay the bank on Dr. Jones' behalf and this he did not do. In light of the foregoing, it is unnecessary to rule on the claim based on the theories of embezzlement

250

and larceny. A separate final judgment shall be entered in accordance with the foregoing.

DONE AND ORDERED.