In re Paul ELLENBOGEN, Debtor.

**Daniel SAMUELS, Plaintiff,**

v.

**Paul ELLENBOGEN, Defendant.**

**Bankruptcy No. 96 B 21640(ASH).**
**Adversary No. 96–5297A.**

United States Bankruptcy Court,
S.D. New York.

March 13, 1998.

Paul E. Kerson, Forest Hills, NY, for Plaintiff.

Reich, Reich & Reich, P.C. by Lawrence Reich, Robin Reich, White Plains, NY, for Defendant.

## DECISION ON CLAIM UNDER
## 11 U.S.C. § 523(a)(4)

ADLAI S. HARDIN, Jr., Bankruptcy Judge.

Plaintiff Daniel Samuels ("Samuels") filed this adversary proceeding against debtor Paul Ellenbogen ("Ellenbogen") to declare non-dischargeable Ellenbogen's debt to Samuels. The debt is based on a decision and judgment of the Surrogate's Court, Westchester County, which held Ellenbogen liable for negligent performance of his duties as a fiduciary.

Samuels has moved for summary judgment based on the complaint, the Surrogate's Court decision and judgment and a statement of material facts which Ellenbogen does not dispute. The sole issue presented on this motion is whether a fiduciary's negligence constitutes "defalcation" under 11 U.S.C. § 523(a)(4). This Court holds that the term "defalcation" as used in section 523(a)(4) does not include mere negligent conduct on the part of a fiduciary. Therefore, Ellenbogen's debt is dischargeable in bankruptcy.

The Court has jurisdiction of this core proceeding under 28 U.S.C. §§ 1334(a) and 157(a) and (b)(2).

### Background

Ellenbogen was the trustee of an express trust established for Samuels, as life beneficiary, and Samuels' children. When Ellenbogen assumed the trusteeship, the trust corpus valued approximately $194,000. In an attempt to increase income for the life beneficiary, Ellenbogen made several high-risk investments with trust funds. In June 1987 he invested $30.000 at 15% interest in the Gouverneur Commons Limited Partnership, a builder of townhouses in Newark, New Jersey. This investment generated about $6,500 of income before Gouverneur collapsed resulting in a complete loss of the $30,000 principal. The Surrogate's Court concluded that:

[t]here is no persuasive evidence on this record that the investment, viewed objectively as of the time it was made, was unnecessarily risky or imprudent. While, as a matter of hindsight, the investment should not have been made, the court cannot hold petitioner to a standard of investment infallibility or to imbue him with a foreknowledge of events. (citations omitted)

Decision of the Surrogate's Court, Westchester County, at 3 (June 17, 1994) (file no. 1980/3689) (Emanuelli, S.). Ellenbogen was surcharged by the Surrogate's Court for two improvident investments. One was a personal loan of $4,500 to an unrelated individual. The Surrogate's Court found this "unsecured personal loan to be among the riskiest and most imprudent of investments" and held that the loan "was a violation of the trustee's duty of prudent investing." *Id.* at 5.

The other improvident investment was a loan of $100,000 to another unrelated individual secured by a third mortgage. The borrower was to repay the principal of the loan in six months at a 16% interest rate. The loan was subordinate to first and second mortgages totaling $600,000. The borrower defaulted, and the trust fund recovered only $14,000 of the $100,000 loan. The Surrogate's Court found as follows:

Obviously the trust did not have the financial ability to buy out the superior mortgages if either, or both, of those loans went into default. It appears that the trustee ignored negative items contained in the mortgagor's credit report, relying instead on personal assurances of the mortgagor's credit-worthiness made by the attorney/mortgage broker who solicited the loan and who had a personal financial interest in the making of the loan. It appears further that the trustee's assessment of the mortgagor's net worth was based in large part on his holdings in substantially-leveraged real estate and not discounted for the declining real estate market. The

court credits the testimony of the respondent's expert, a certified financial planner, to the effect that the inherently risky nature of third mortgage loans makes them wholly inappropriate fiduciary investments. The court finds that the making of the third mortgage loan by the petitioner-trustee was improvident and negligent and in violation of the "prudent man" rule of fiduciary investment. [Ellenbogen] must be surcharged for the losses incurred by the trust as the result of the making of this loan.

*Id.* at 4–5.

### The meaning of "defalcation"

█ Section 523(a)(4) of the Bankruptcy Code provides that a discharge under section 727 does not discharge an individual debtor from any debt

> (4) for fraud or defalcation while acting in a fiduciary capacity, embezzlement, or larceny.

█ The meaning of "defalcation" in section 523(a)(4) is a matter of federal law. *Otto v. Niles (In re Niles)*, 106 F.3d 1456, 1460 (9th Cir.1997); *Carlisle Cashway, Inc. v. Johnson (In re Johnson)*, 691 F.2d 249, 254 (6th Cir.1982). Neither the Bankruptcy Code nor the legislative history of section 523(a)(4) defines defalcation. *Orem Postal Credit Union v. Twitchell (In re Twitchell)*, 72 B.R. 431, 434 (Bankr.D.Utah 1987), *rev'd*, 91 B.R. 961 (D.Utah 1988), *rev'd*, 892 F.2d 86 (10th Cir.1989); *Meyer v. Rigdon*, 36 F.3d 1375, 1382 (7th Cir.1994); *see also Quaif v. Johnson*, 4 F.3d 950, 955 (11th Cir.1993). Hence, one must look to the precedents and other guides to statutory interpretation.

There is apparent conflict among the federal decisions in the interpretation of defalcation. Some courts have held that the term implies at least some element of consciously wrongful or reprehensible conduct. Others have stated that defalcation comprehends "innocent" failure of a trustee to account[1] for trust funds and that mere negligence or mistake is sufficient to hold a debt non-dischargeable under section 523(a)(4).

The leading case in the Second Circuit is *Central Hanover Bank & Trust Co. v. Herbst*, 93 F.2d 510 (2d Cir.1937) (L.Hand, J.). Herbst, the bankrupt, had been appointed receiver of a parcel of real property in a foreclosure suit. In a contested accounting proceeding, the foreclosure court had entered an order settling his account and awarding him an allowance of $5,674.54. Without waiting for the time to appeal from this order to expire, Herbst withdrew the money from the trust account and spent it personally. On appeal, the award of $5,674.54 to Herbst was reversed, and Herbst was held liable to the foreclosure plaintiff for this amount. Herbst then filed for bankruptcy. The sole question before the Second Circuit was whether the foreclosure plaintiff's claim against Herbst was dischargeable under the predecessor of section 524(a)(4), section 17(a)(4) of the Bankruptcy Act, which referred to "defalcation while acting ... in any fiduciary capacity." The Second Circuit held that Herbst's withdrawal and dissipation of the $5,674.54 while his right to the fund was still in litigation on appeal constituted "defalcation" within the meaning of the statute. In so doing, the Court made the following observations:

> Colloquially perhaps the word, "defalcation," ordinarily implies some moral dereliction, but in this context it may have included innocent defaults, so as to include all fiduciaries who for any reason were short in their accounts.... Whatever was the original meaning of "defalcation," it must have covered other defaults than de-

---

1. There is some ambiguity in the word "account" which may contribute to the apparent conflict among the courts. If "to account" is used in the sense of to produce and pay over when called upon to do so, a failure to account in this sense may result (1) from some cause of which the fiduciary is entirely innocent (*e.g.*, the unpredictable failure of a bank or other investment vehicle, or loss of the trust res by an act of God), or (2) from conduct of the trustee which is negligent but not morally reprehensible or violative of

some basic fiduciary obligation (other than reasonable care), or (3) from actual malfeasance of the trustee. On the other hand, if failure "to account" is used in the sense of a trustee's failure to explain the disappearance of trust assets, this alone constitutes malfeasance, for a fiduciary must be able to explain what he did with the property entrusted to him. Stated differently, a trustee's failure to explain what became of trust assets can never be characterized as innocent or merely negligent.

liberate malversations, else it added nothing to the words, "fraud or embezzlement."

\* \* \* \* \* \*

In the case at bar the bankrupt had not been entirely innocent—not, for instance like the victim of an employee—though possibly one may acquit him of deliberate wrongdoing. A judge had awarded him the money, and prima facie he was entitled to it; but he knew, or if he did not know, he was charged with notice ... that the order would not protect him if it were reversed; and that it might be reversed until the time to appeal had expired. . . . We do not hold that no possible deficiency in a fiduciary's accounts is dischargeable; *In re Bernard*, 87 F.2d 705, 707, we said that "the misappropriation must be due to a known breach of the duty, and not to mere negligence or mistake." Although that word probably carries a larger implication of misconduct than "defalcation," "defalcation" may demand some portion of misconduct; we will assume arguendo that it does.

All we decide is that when a fiduciary takes money upon a conditional authority which may be revoked and knows at the time that it may, he is guilty of a "defalcation" though it may not be a "fraud," or an "embezzlement," or perhaps not even a "misappropriation."

*Id.* at 511–12.

Surely there is grist in the *Herbst* decision for both sides of the argument whether defalcation includes innocent or merely negligent conduct, or requires some element of malfeasance. Thus, the statement in *Herbst* that "in this context it [defalcation] may have included innocent defaults, so as to include all fiduciaries who for any reason were short in their accounts" has been cited as precedent, or is similar to like statements, in a number of decisions.[2] However, the remainder of the above-quoted passage from the *Herbst* decision suggests a contrary rule in the Second Circuit—that "defalcation" demands proof of some element of misconduct. Thus, the Court noted that the conduct of Herbst "had not been entirely innocent," and the Court made clear that "[w]e do *not* hold that no possible deficiency in a fiduciary's accounts is dischargeable" (emphasis supplied). The Court then quoted its decision in *In re Bernard*, 87 F.2d 705, 707 (2d Cir. 1937), to the effect that "misappropriation must be due to a known breach of the duty, and not mere negligence or mistake" and, while observing that misappropriation carries a larger implication of misconduct than defalcation, concluded that " 'defalcation' may demand some portion of misconduct; *we will assume arguendo that it does* " (emphasis supplied).

A number of authorities have followed the narrower interpretation of defalcation expressed in the latter portion of the *Herbst* quotation. *See, e.g., Meyer v. Rigdon*, 36

**2.** *See, e.g., Stone v. Stone (In re Stone)*, 90 B.R. 71, 80 (Bankr.S.D.N.Y.1988), *aff'd*, 94 B.R. 298 (S.D.N.Y.1988), *aff'd*, 880 F.2d 1318 (2d Cir. 1989); *Semilof v. Waskew (In re Waskew)*, 191 B.R. 34, 37 (Bankr.S.D.N.Y.1995); *Peerless Ins. Co. v. Casey (In re Casey)*, 181 B.R. 763, 766 (Bankr.S.D.N.Y.1995); *Schwalbe v. Gans (In re Gans)*, 75 B.R. 474, 490 (Bankr.S.D.N.Y.1987); *Lewis v. Scott (In re Lewis )*, 97 F.3d 1182, 1186 (9th Cir.1996); *Woodworking Enters., Inc. v. Baird (In re Baird)*, 114 B.R. 198, 204 (9th Cir. BAP 1990); *Kaufman v. Tallant (In re Tallant)*, 207 B.R. 923, 929 (Bankr.E.D.Cal.1997); *Strube Celery & Vegetable Co., Inc. v. Zois (In re Zois)*, 201 B.R. 501, 506–07 (Bankr.N.D.Ill.1996); *Jones v. Francisco (In re Francisco)*, 204 B.R. 247, 249 (Bankr.M.D.Fla.1996); *Shappy v. Scott (In re Scott)*, 201 B.R. 424, 436 (Bankr.E.D.Va. 1996); *G.W. White & Son, Inc. v. Tripp (In re Tripp)*, 189 B.R. 29, 35 (Bankr.N.D.N.Y.1995); *Am. Title Ins. Co. v. Marderosian (In re Marderosian)*, 186 B.R. 341, 346 (Bankr.D.R.I.1995); *Ducey v. Doherty (In re Ducey)*, 160 B.R. 465, 468 (Bankr.D.N.H.1993); *Ball v. McDowell (In re McDowell)*, 162 B.R. 136, 139 (Bankr.N.D.Ohio 1993); *In re Chavez*, 140 B.R. 413, 424 (Bankr. W.D.Tex.1992); *Reliance Ins. Co. v. Wilson (In re Wilson)*, 127 B.R. 440, 443 (Bankr.E.D.Mo. 1991); *Moss v. Miller (In re Miller)*, 133 B.R. 405, 408 (Bankr.S.D.Ohio 1991); *Alaska Teamster–Employer Pension Trust v. Wise (In re Wise)*, 120 B.R. 537, 543 (Bankr.D.Alaska 1990); *BAMCO 18 v. Reeves (In re Reeves)*, 124 B.R. 5, 6 (Bankr.D.N.H.1990); *Pan–Western Life Ins. Co. v. Galbreath (In re Galbreath)*, 112 B.R. 892, 900 (Bankr.S.D.Ohio 1990); *Erie Materials, Inc. v. Oot (In re Oot)*, 112 B.R. 497, 501 (Bankr. N.D.N.Y.1989); *Home Ins. Co. v. McCormick (In re McCormick)*, 70 B.R. 49, 51 (Bankr.W.D.Pa. 1987); *Moore v. Holman (In re Holman)*, 42 B.R. 848, 850 (Bankr.E.D.Mo.1984); *Besroi Constr. Corp. v. Kawczynski (In re Kawczynski)*, 442 F.Supp. 413, 418 (W.D.N.Y.1977).

F.3d at 1384–85 ("a mere negligent breach of a fiduciary duty is not a 'defalcation'"); *see also Moreno v. Ashworth (In re Moreno)*, 892 F.2d 417, 421 (5th Cir.1990) ("A defalcation is a willful neglect of duty"); *Kaufman v. Lederfine*, 49 F.Supp. 144, 145 (S.D.N.Y. 1943) ("defalcation has a wider meaning than misappropriation and may characterize a transaction in which there is a mere deficit resulting from misconduct"); *In re Johnson*, 691 F.2d at 257; *Chase Lumber & Fuel Co. v. Koch (In re Koch)*, 197 B.R. 654, 658 (Bankr.W.D.Wis.1996) ("It is the plaintiff's burden to show by a preponderance of the evidence that more than mere negligence led to the debtor's failure to pay"); *BCCI Holdings (Luxembourg), S.A. v. Clifford*, 964 F.Supp. 468, 484 (D.D.C.1997) (" 'Defalcation is not a synonym for fraud, embezzlement, or misappropriation, but has a broader meaning relative to the failure of a fiduciary to account for money received in a fiduciary capacity as a result of misconduct' ") (citing Benjamin Weintraub & Man Resnick, *Bankruptcy Law Manual* ¶ 3.09[4], at 3–35 (1980)); *Harsch v. Eisenberg (In re Eisenberg)*, 189 B.R. 725, 730 (Bankr.E.D.Wis. 1995) (requiring "something more than a negligent breach of a fiduciary duty"); *Houston v. Capps (In re Capps)*, 193 B.R. 955, 963 (Bankr.N.D.Ala.1995) ("purely negligent defalcations . . . may not fall within the ambit of the statute"); *Stanley H. Silverblatt Elec. Contractor, Inc. v. Marino (In re Marino)*, 139 B.R. 380, 384 (Bankr.D.Md.1992) (following *Herbst* in demanding "some portion of misconduct"); *Discount Home Ctr., Inc. v. Turner (In re Turner)*, 134 B.R. 646, 659 (Bankr.N.D.Okl.1991) ("such act is not mere mistake, mismanagement or ordinary negligence, but is misconduct of just the sort that the State statute forbids"); *Neilson v. Simpson (In re Simpson)*, 37 B.R. 132, 136 (Bankr.D.N.H.1984); *Hash v. Reed (In re Reed)*, 155 B.R. 169, 172 n. 5 (Bankr.S.D.Ohio 1993); *Getaz v. Stewart (In re Stewart)*, 123 B.R. 817, 819 (Bankr.W.D.Tenn.1991); *Purcell v. Janikowski (In re Janikowski)*, 60 B.R. 784, 790 (Bankr.N.D.Ill.1986) ("This case as pleaded thereby goes far beyond a mere allegation of attorney negligence or malpractice which could not, standing alone, bar discharge under § 523(a)(4)"). Citing

*Herbst* in purporting to summarize the law, the *Collier* treatise states:

> Since debts arising from breaches of ordinary care are normally dischargeable in bankruptcy and exceptions to discharge are strictly construed in favor of debtor, some degree of culpability is required to make a debt non-dischargeable as a defalcation under section 523(a)(4).

4 *Collier on Bankruptcy*, § 523.10 [1] [b] (15th ed. rev.1996). To the same effect, *see Black's Law Dictionary* at 504, 505 (4th ed. 1951) ("Colloquially, perhaps, the word 'defalcation' ordinarily implies some moral dereliction. As used in the Bankruptcy Act, it may demand some portion of misconduct, but it is not synonymous with 'embezzlement' "). *But see Norton Bankruptcy Law and Practice 2d*, § 47:27 (1997) ("[D]efalcation involves the slightest misconduct and indeed may not involve misconduct at all"). The *Collier* footnote supporting the quotation above also cites the Ninth Circuit B.A.P. decision in *In re Martin*, 161 B.R. 672, 678 (9th Cir. BAP 1993) ("we . . . hold that the mere failure to use ordinary care in accounting for an asset does not *per se* constitute 'defalcation' within the context of § 523(a)(4). There simply must be a showing of some element of bad faith or reprehensible conduct for nondischargeability under § 523(a)(4)") (emphasis in original), but it should be noted that this decision was expressly overruled by the Court of Appeals for the Ninth Circuit in *In re Lewis*, 97 F.3d at 1186–87.

Other than the Ninth Circuit, it appears that the circuit courts have tended to conclude that mere negligence does not suffice for defalcation without some element of willfulness or other misconduct such as violation of law, while a larger number of district and bankruptcy courts have stated that merely negligent conduct may constitute defalcation. For cases holding that mere negligence does not meet the minimum level of culpability required for defalcation *see Meyer v. Rigdon*, 36 F.3d at 1382–85; *In re Johnson*, 691 F.2d at 255–57; *Old Republic Surety Co. v. Richardson (In re Richardson)*, 178 B.R. 19, 28 (Bankr.D.C.1995). *aff'd*, 193 B.R. 378 (D.D.C. 1995), *aff'd*, 107 F.3d 923 (D.C.Cir.1997), *cert denied*, —— U.S. ——, 118 S.Ct. 143, 139

L.Ed.2d 90 (1997); *Stowe v. Bologna*, 206 B.R. 628, 635 (Bankr.D.Mass.1997); *see also Quaif v. Johnson*, 4 F.3d at 955. The Sixth Circuit has articulated an objective standard in *In re Johnson*, 691 F.2d at 254–55. This standard charges the debtor with knowledge of the law, while motive and intent are irrelevant. *Id.* Negligence or mistake of fact are insufficient to constitute defalcation, but breaching a fiduciary duty imposed by law is enough of a bad act to make the debt nondischargeable. *Id.* at 256, 257. The *Johnson* court found that an objective standard comports with the purpose of bankruptcy law. Bankruptcy seeks to give "an honest debtor the opportunity for economic rehabilitation." *Id.* at 255–56. "[A] defalcation may exist when there is a diminution, abatement or deficit in an account as a result of a mistake or negligence *in addition to misconduct.*" *Id.* at 256, emphasis supplied. *See also Clark v. Wilbur (In re Wilbur)*, 1997 WL 375687 *5 (Bankr.M.D.Fla.1997) (following an objective standard). The *Meyer* court focused its analysis on whether the fiduciary willfully neglected a fiduciary duty, 36 F.3d at 1383 (citing *In re Moreno*, 892 F.2d at 421), stating:

> Black's Law Dictionary 1599 (6th ed.1990) defines "willful" as "[p]roceeding from a conscious motion of the will; voluntary; knowingly; deliberate. Intending the result which actually comes to pass; designed; intentional; purposeful; not accidental or involuntary." According to Black's, "[a] willful act differs essentially from a negligent act." *Id.*

*Meyer*, 36 F.3d at 1384. The *Meyer* court's discussion draws a bright line distinction between negligence and defalcation. The failure to act with reasonable prudence does not necessarily imply willful neglect of duty. As noted in *In re Johnson*, negligence without some element of misconduct does not constitute defalcation.[3]

Actually, the conflict between those cases which state that defalcation may include innocent conduct or mere negligence and those which hold that some element of misconduct is necessary may be more apparent than real, because the former cases almost invariably involve conduct which is not innocent, such as that described by the Second Circuit in the *Herbst* case. Indeed, no case has been discovered where it clearly appears that a court denied a debtor discharge for a defalcation for truly innocent or merely negligent conduct. For example: in *Peerless Insurance Co. v. Casey (In re Casey)*, *supra*, the defendant-debtor could not account for (*i.e.*, could not explain the disappearance of) $138,390 of lottery sales receipts which he held as a trust fund; in *Semilof v. Waskew (In re Waskew)*, *supra*, the defendant-debtor, a home builder, could not account for his disposition of $34,579 of funds paid to him and held by him in trust under the New York Lien Law; in *Stone v. Stone (In re Stone)*, 90 B.R. at 80, Judge Schwartzberg stated "This court interprets Justice Buell's findings to mean that the debtor intentionally, maliciously and deviously attempted to divert partnership assets which belonged to the plaintiff"; in *In re Lewis*, 97 F.3d at 1184–85, the debtors commingled the creditor's investment in their partnership with their own funds; in *Erie Materials, Inc. v. Oot (In re Oot)*, *supra*, the defendant-debtor, by invoking the privilege against self-incrimination, failed to rebut the statutory presumption of New York Lien Law section 75(4) which presumes that the debtor diverted trust funds (defendant-debtor did not pay $4,324.90 owed to subcontractor out of the $10.200 trust funds); in *In re Wilson*, 127 B.R. at 443, the debtor-defendant made $11,225.28 of unauthorized withdrawals from the trust funds; in *Quaif v. Johnson*, 4 F.3d at 955, while stating that innocent conduct comes within the meaning of defalcation, the court found that "[t]he record before the court indicates that the transfer of funds from the premium account to the operating and payroll accounts was far more than an innocent mistake or

---

3. For lower court cases stating that mere negligence suffices to establish defalcation, *see In re Tripp*, 189 B.R. at 35; *Bellity v. Wolfington (In re Wolfington)*, 48 B.R. 920, 923 (Bankr.E.D.Pa.1985); *In re Oot*, 112 B.R. at 500; *S.J. Groves & Sons Co. v. Peters (In re Peters)*, 90 B.R. 588, 606 (Bankr.N.D.N.Y.1988); *In re Baird*, 114 B.R. at 204; *In re Tallant*, 207 B.R. at 929; *In re Scott*, 201 B.R. 424, 436 (Bankr. E.D.Va.1996); *Cundy v. Woods (In re Woods)*, 175 B.R. 78, 84 (Bankr.D.Colo.1994); *In re Chavez*, 140 B.R. at 424.

even negligence"; in *American Insurance Co. v. Lucas,* 41 B.R. 923, 925 (W.D.Pa.1984) the court stated that defalcation does not require any intentional wrongdoing, but in that case the debtor commingled trust funds (license proceeds) with funds it used to pay company expenses, actions which were far from being merely negligent; in *Bellity v. Wolfington,* 48 B.R. at 922, the debtor-defendant withdrew money from an escrow account and used it for purposes other than for the purchase of the condominium unit; in *In re Tallant,* 207 B.R. at 927, the debtor-attorney advised his client to deposit money in various accounts so that it would be difficult for the client's creditors to trace these assets; in *Berry v. Mullin (In re Mullin),* 91 B.R. 175, 176 (Bankr.S.D.Fla.1988), the debtor wrongfully removed money from an escrow account over the creditor's objection. *R.E. America, Inc. v. Garver (In re Garver),* 116 F.3d 176 (6th Cir.1997), offers further insight into the issue of whether negligence suffices for defalcation. Garver, an attorney, recommended to R.E. America ("REA"), a client of his law firm, that he and REA acquire a struggling company. Despite entering into a contract with REA. Garver failed to pay his share of the purchase price. As a result, REA lost its investment in the company. REA sued Garver for legal malpractice. breach of contract, and fraud. A state court jury concluded that Garver "1) committed legal malpractice by breaching unspecified fiduciary duties owed to REA as his client and 2) breached his contract with REA to contribute $600,000 to the venture." *Id.* at 177. Also, the jury "specifically found that Garver *had not* committed fraud." *Id.* (emphasis in original) Subsequently, Garver filed for Chapter 7 bankruptcy and REA filed an adversary proceeding. REA alleged that Garver's debt should not be discharged pursuant to section 523(a)(4) because Garver " 'fail[ed]' to meet an obligation' while acting in a fiduciary capacity." *Id.* at 179. Reversing the lower courts' rulings, the Sixth Circuit stated:

> The mere failure to meet an obligation while acting in a fiduciary capacity simply does not rise to the level of defalcation. . . .
>
> . . . the funds were merely lost because the venture turned out to be a poor invest-

ment. Because all funds in this case were properly accounted for, no defalcation occurred, and the debt is dischargeable under Chapter 7 of the Bankruptcy Code.

*Id.* at 179, 180.

Likewise, the court in *Kinsler v. Pauley (In re Pauley),* 205 B.R. 501, 514 (Bankr. W.D.Mich.1997), also considered whether a loss on an investment provided a basis for defalcation. The court noted:

> The Plaintiffs do *not* make any allegations that the Pauleys misappropriated funds raised from the investors by failing to use the proceeds to drill for oil. There is no evidence in the record which even suggests that the Pauleys absconded with any money by placing it in their personal accounts. Nor is there any evidence that the Pauleys improperly failed to account for the funds that were invested. . . . However, even assuming that Plaintiffs did not receive any returns and lost all of the monies they invested, this fact alone would not constitute a "defalcation" on the part of the Pauleys. Just because an investment proves unsuccessful does not mean that there was a "defalcation" within the meaning of section 523(a)(4).
>
> This conclusion is consistent with other cases decided in this district in which courts have refused to find that losses on investments were nondischargeable under section 523(a)(4).

*Id.* (citations omitted; emphasis in original).

On the record before the Court, this case presents squarely for decision the question whether mere negligence of a fiduciary constitutes defalcation within the meaning of section 523(a)(4) so as to warrant denial of discharge. The Surrogate's Court found two of Ellenbogen's investments of trust funds to be "improvident and negligent and in violation of the 'prudent man' rule of fiduciary investment" (Decision at 5). But there is no intimation of bad faith or willful misconduct on Ellenbogen's part in the Surrogate's decision or elsewhere in the record before this Court. Indeed, the decision notes that Ellenbogen had testified "that Daniel Samuels, the income beneficiary of the trust, was dissatisfied with the conservative investment

approach taken by the previous trustees. Mr. Samuels is alleged to have instructed petitioner to seek investments with a higher interest yield" (Decision at 1–2), and the Surrogate concluded that "[i]t is also clear that investments were made with a view toward maximizing income at the expense of trust preservation" and that "the trustee's action would have to be deemed negligent and improvident" (*id.* at 6).

■ Lacking definitive precedent to the contrary in the Second Circuit, this Court holds that mere negligence, without some element of intentional wrongdoing, breach of fiduciary duty or other identifiable misconduct, does not constitute "defalcation" within the meaning of section 523(a)(4). This result accords with customary principles of statutory interpretation and with the over-arching objectives of the Bankruptcy Code.

■ It is an accepted rule of statutory interpretation that words used in a statute should be accorded their normal dictionary meanings in accordance with accepted custom and usage. *See Aquarius Marine Co. v. Pena,* 64 F.3d 82, 89 (2d Cir.1995) (Second Circuit defines a term in manner "consistent with common usage and the dictionary meaning of that term"); *J.Z.G. Resources, Inc. v. King,* 987 F.2d 98, 102 (2d Cir.1993), *cert. denied sub nom, J.Z.G. Resources, Inc. v. Shelby Ins. Co.,* 510 U.S. 993, 114 S.Ct. 553, 126 L.Ed.2d 454 (1993) (Second Circuit looks to the dictionary meaning of a term for guidance); *Park 'N Fly, Inc. v. Dollar Park and Fly, Inc.,* 469 U.S. 189, 194, 105 S.Ct. 658, 661, 83 L.Ed.2d 582 (1985) ("Statutory construction must begin with the language employed by Congress and the assumption that the ordinary meaning of that language accurately expresses the legislative purpose") (citing *American Tobacco Co. v. Patterson,* 456 U.S. 63, 68, 102 S.Ct. 1534, 1537, 71 L.Ed.2d 748 (1982)); *Consumer Prod. Safety Comm'n v. GTE Sylvania, Inc.,* 447 U.S. 102, 108, 100 S.Ct. 2051, 2056, 64 L.Ed.2d 766 (1980) ("We begin with the familiar canon of statutory construction that the starting point for interpreting a statute is the language of the statute itself. Absent a clearly expressed legislative intention to the contrary, that language must ordinarily be regarded as

conclusive"); *United States v. Kinzler,* 55 F.3d 70, 72 (2d Cir.1995) ("Statutory interpretation starts with the language of the statute itself, and we read a statute applying the 'ordinary, contemporary, common meaning' of the words used") (quoting *Perrin v. United States,* 444 U.S. 37, 42, 100 S.Ct. 311, 313, 62 L.Ed.2d 199 (1979), *cert. denied sub nom, LaFont v. United States,* 444 U.S. 990, 100 S.Ct. 520, 62 L.Ed.2d 419, *and cert, denied sub nom, Levy v. United States,* 444 U.S. 990, 100 S.Ct. 520, 62 L.Ed.2d 419 (1979)); *Duchow v. New York State Teamsters Conference Pension and Retirement Fund,* 691 F.2d 74, 79 (2d Cir.1982), *cert. denied,* 461 U.S. 918, 103 S.Ct. 1902, 77 L.Ed.2d 289 (1983) ("ERISA itself does not contain a definition of 'anniversary.' This omission, in a complex statute replete with defined terms. suggests that the ordinary meaning of the word was intended"); *Clarkson Constr. Co. v. Drexel Burnham Lambert Group, Inc. (In re Drexel Burnham Lambert Group, Inc.),* 158 B.R. 30, 34 (S.D.N.Y.1993); *In re R.H. Macy & Co., Inc.,* 152 B.R. 869, 873 (Bankr.S.D.N.Y.1993), *aff'd,* 1994 WL 482948 (S.D.N.Y.1994).

The word "defalcation," in ordinary and customary usage, undoubtedly connotes some element of misconduct beyond mere negligence. For example, "defalcation" has been defined as follows: *Oxford English Dictionary* at 369 (2d ed.1989) ("a monetary deficiency through breach of trust by one who has the management or charge of funds; a fraudulent deficiency in money matters; also *concr.* (in *pl.*), the amount so misappropriated"; "defalcator: one guilty of defalcation; one who has misappropriated money or other property committed to his care"); *Funk and Wagnalls—New "Standard" Dictionary of the English Language* at 668 (1951) ("an embezzlement or fraudulent appropriation of money held in trust; a deficiency caused by breach of trust"); *Webster's Third New International Dictionary of the English Language Unabridged* at 590 (vol. I 1965) ("3a: misappropriation of money in one's keeping: b: a sum of money so misappropriated"). *See also* the quotations from the Second Circuit decision in *Herbst, Collier* and *Black's Law Dictionary* set forth above. To con-

strue defalcation to mean mere negligence would conflict with the meaning attributed to the word in common parlance and in virtually every authoritative source.

It would also conflict with the fundamental objectives of the bankruptcy laws in this country. In one of the earliest Supreme Court decisions dealing with the Bankruptcy Act. Justice Day commented:

> Systems of bankruptcy are designed to relieve the honest debtor from the weight of indebtedness which has become oppressive, and to permit him to have a fresh start in business or commercial life, freed from the obligation and responsibilities which may have resulted from business misfortunes.

*Wetmore v. Markoe*, 196 U.S. 68, 77, 25 S.Ct. 172, 176, 49 L.Ed. 390 (1904). The objective of the bankruptcy law to grant a fresh start "to the honest but unfortunate debtor" was reiterated by the Supreme Court in *Local Loan Co. v. Hunt*, 292 U.S. 234, 244–45, 54 S.Ct. 695, 699, 78 L.Ed. 1230 (1934). Congress reiterated this viewpoint when it passed the Bankruptcy Reform Act in 1978, commenting that discharge is "the heart of the fresh start provisions of the bankruptcy law." *Matter of Martonak*, 67 B.R. 727, 728 (Bankr.S.D.N.Y.1986) (quoting 11 U.S.C. § 727 no. 595, 95th Cong., 1st Sess. 384 (1977); No. 989, 95th Cong., 2d Sess. 98 (1978), U.S.Code Cong. & Admin. News 1978, pp. 5787, 5884, 6340).

■ It follows that non-dischargeability is "perceived to be a punitive exception to the 'fresh start' policy and should be found reluctantly." *Matter of Martonak*, 67 B.R. at 728 (citing *In re Huff*, 1 B.R. 354, 357 (Bankr. D.Utah 1979); *Gleason v. Thaw*, 236 U.S. 558, 35 S.Ct. 287, 59 L.Ed. 717 (1915)); *accord In re Harron*, 31 B.R. 466, 468 (Bankr. D.Conn.1983). The courts have repeatedly stressed that the section 523(a) exceptions to discharge must be strictly construed to comport with the "fresh start" philosophy underlying the Bankruptcy Code. *See, e.g. Household Fin. Corp. v. Danns (In re Danns)*, 558 F.2d 114, 116 (2d Cir.1977) ("exceptions to discharge are to be narrowly construed") (interpreting section 17(a), the predecessor statute of section 523); *Shearson Lehman Hut-*

*ton, Inc. v. Schulman (In re Schulman)*, 196 B.R. 688, 693 (Bankr.S.D.N.Y.1996); *Colonial Nat'l Bank, USA v. Carrier (In re Carrier)*, 181 B.R. 742, 746–47 (Bankr.S.D.N.Y. 1995); *Fellow, Read & Assocs., Inc. v. Rieder (In re Rieder)*, 178 B.R. 373, 376 (1995), *aff'd sub nom, Fellows, Read & Assocs., Inc. v. Rieder*, 194 B.R. 734 (S.D.N.Y.1996), *aff'd*, 116 F.3d 465 (2d Cir.1997); *Stodut v. Internal Revenue Service (In Re Stodut)*, 181 B.R. 751, 754 (Bankr.S.D.N.Y.1995) ("well settled rule that exceptions to discharge must be strictly construed against the creditor and liberally in favor of the honest debtor in order to further the paramount bankruptcy policy of affording an economic 'fresh start'") (citing *Grogan v. Garner*, 498 U.S. 279, 286, 111 S.Ct. 654, 659 (1991)); *Kuper v. Spar (In re Spar)*, 176 B.R. 321, 326 (Bankr.S.D.N.Y. 1994) ("To meet the goals intended under the Code, exceptions to discharge must be strictly and literally construed against the creditor and liberally construed in favor of the honest debtor"); *Community Mut. Sav. Bank v. Landrin (In re Landrin)*, 173 B.R. 307, 310 (Bankr.S.D.N.Y.1994); *Hudson Valley Water Resources, Inc. v. Boice (In re Boice)*, 149 B.R. 40, 43 (Bankr.S.D.N.Y.1992) ("Exceptions to dischargeability are construed strictly against the creditor and liberally in favor of the debtor to accomplish bankruptcy's 'fresh start' goal") (citing *Gleason v.. Thaw*, 236 U.S. 558, 562, 35 S.Ct. 287, 289, 59 L.Ed. 717 (1915)); *Smith v. Meyers (In re Schwartz & Meyers)*, 130 B.R. 416, 421 (Bankr.S.D.N.Y.1991); *Schwalbe v. Gans (In re Gans)*, 75 B.R. 474, 481 (Bankr.S.D.N.Y. 1987).

*See also REL Commercial Corp. v. Materetsky (In re Materetsky)*, 28 B.R. 499, 501 (Bankr.S.D.N.Y.1983); *Insurance Co. of N. Am. v. Cohn (In re Cohn)*, 54 F.3d 1108, 1113 (3d Cir.1995); *Meyer v. Rigdon*, 36 F.3d at 1385; *Boyle v. Abilene Lumber, Inc. (Matter of Boyle)*, 819 F.2d 583, 588 (5th Cir.1987); *AT & T Universal Card Servs. Corp. v. Akdogan (In re Akdogan)*, 204 B.R. 90, 95 (Bankr.E.D.N.Y.1997).

The rule or maxim of *ejusdem generis* further supports the narrower interpretation of defalcation. The other operative words used in section 523(a)(4)—fraud, embezzle-

ment and larceny—all relate to affirmative misconduct by the debtor. Indeed, the same may be said for all of the exceptions to discharge under section 523(a) which are based upon the debtor's conduct (*viz*, subsection (2) fraud, (6) willful and malicious injury, (9) death or injury resulting from driving while intoxicated with alcohol or drugs, (12) malicious and reckless failure). In defining the term "misappropriation" under the predecessor statute of section 523(a), using language equally applicable to defalcation, the Second Circuit in *In re Bernard*, 87 F.2d 705, 707 (2d Cir.1937), found that "[s]ection 17a(4) places liabilities 'created by his fraud, embezzlement, misappropriation, or defalcation' in the same clause. Such a collocation under the rule of 'ejusdem generis' indicates that the misappropriation must be due to a known breach of duty, and not to mere negligence or mistake." Since Congress nowhere expressly created an exception to discharge for negligence, it is anomalous to construe defalcation in a manner which is markedly at variance both with the other conduct-based exceptions to discharge provided by Congress and with the plain and ordinary dictionary meaning of the word. Finally, since negligence alone does not connote dishonesty, denial of discharge for negligence would conflict with the universally-recognized objective of the bankruptcy laws to provide a fresh start to the "honest debtor."

Counsel for Ellenbogen will settle an order dismissing the adversary proceeding.